# CHAPTER VIII: PARTICULAR CONDITIONS
# POLICY No. 200.683*6

**INSURED** World Magic Entertainment, Inc.

**INTERESTS** Cargo of whatever nature of description, wherever located onshore or offshore or airborne and in whatsoever situation and including whilst in transit, transhipment (including Barges) and care, custody and control of Assured, at and from the moment the property is at the risk of Assured but principally Electronics, Recording Media, Computer Parts and Appliances.

All above applying on basis owned by assured or in which they have an interest or for which assured is liable or responsible or obligated or agrees to insure, under contract or otherwise.

## MAXIMUM SUM INSURED

**TRANSITS** A maximum of US$2,000,000 any one conveyance and/or any one separate risk and US$1,000,000 any one container.

**WAREHOUSE** Limit of Liability of $300,000 on stock on the above noted premises.

**GEOGRAPHICAL LIMITS** All voyages are insured from any part of the world to any part of the world, but principally from Miami, Hong Kong, China and Canada to Miami and Paraguay

**MEANS OF CONVEYANCE** All means of transportation, conveyances and vessels must comply with the "Institute Classification Clause".

## CONDITIONS

**GENERAL** Following Marine Cargo Open Policy; the Assured hereby warrants:
Goods to travel overland during daytime only in Central & South America
Overland Shipments in Central & South America valued in Excess of $50,000 but not exceeding $100,000 must travel with Armed Guards and GPS Satellite tracking system. Furthermore, Overland Shipments valued in Excess of $100,000 must travel via convoy of trucks with Armed Guards and GPS Satellite tracking system.
Coverage subject to prior declaration via facsimile to IJU AGENCY LTD., NY, NY. Coverage will commence at the time the shipment is declared and received at IJU AGENCY LTD., NY, NY
For all consignments with an actual value of $150,000 or greater made via container, a certificate will be obtained from an independent company attesting in sum and substance that its representative witnessed the loading and sealing of the container and that the contents thereof match those declared in the assureds' documentation.
For all consignments with an actual value of $150,000 or greater made via container, the container will be escorted to the port by a responsible person not affiliated with the assured or the company transporting said container.
If, at any time prior to removal of the contents from a container, the assured or his agent obtains information which indicates that the container has been or may have been tampered with or the contents thereof pilfered, the assured shall immediately notify both underwriters' average agents and the carrier and shall not remove the contents of the container, or permit said container to be removed by others, except in the presence of a surveyor appointed on behalf of underwriters.
The assured moreover warrants, in case of warehouse cover that the actual and recommended security measures with regards to the risks of fire and theft as described in the compulsory survey report issued by Donald Yick Associates dated August 19, 2002 are fully operational and functional, will remain so for the full period of insurance and will not be altered by the assured without the prior written consent of the underwriters.

**PARTICULAR FOR ALL CARGOES** In all cases, the following clauses are included as far as applicable:
- Institute Cargo Clauses A dated 1.1.82.
- Institute Cargo Clauses (Air) (excluding sendings by post) dated 1.1.82.
- War Risks for the Carriage of Cargo by Sea dated 11.27.03.



EXHIBIT COMPOSITE A

# CHAPTER VIII: PARTICULAR CONDITIONS
## POLICY No. 200.683*6

- War Risks for the Carriage of Cargo by Air dated 11.27.03.
- Institute Classification Clause (U.K.).
- Institute Replacement Clause.
- Mechanical and Electrical Derangement Exclusion.
- Exclusion of Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons, and Exclusion of Abandonment for Radioactive Goods dated November 27, 2003.
- Exclusion of Risks of War, Strikes, Riots, Civil Commotions and Terrorism dated 19.12.02 modified on 26.06.03.
- Clause Strikes and Riots Risks dated 27.11.03.
- Exclusion of Cyber Attack dated 27.11.03.
- Excluding Mysterious Disappearance and Infidelity.
- Terrorism Exclusion Clause.
- Coverage subject to a positive premium balance remaining on the account of the Assured.

General Average, Salvage Charges and Sue and Labor Removal of Debris / Wreck / Wreckage of cargo covered hereunder even if incurred solely of the result of Governmental or other authoritative order and Costs and Expenses of reproduction and reprocessing etc. arising from any cause whatsoever in respect of the interests covered hereunder.

Claims under this section in respect of General Average, Salvage and/or Salvage Charges may not be reduced even though the insured value is less than any other contributory value, that is to say, average shall not be applied even though the insured value may be less than the adopted contributory value. In any event, the maximum indemnity shall not exceed the insured value.

| | | |
|---|---|---|
| **PREMIUM** | Shipments at: | Minimum and Deposit Premium of US$7,500 +$15.00 Florida Surplus Fees adjustable |
| | Seafreight: | 0.60% plus WSRCC (0.05%). |
| | Airfreight: | 0.35% plus WSRCC (0.05%). |
| | Warehouse: | Yearly Premium of $9,750 + $19.50 Florida Surplus Fees |

**DEDUCTIBLE**    10% of claim amount with a minimum of $25,000 each and every loss

**SERVICE OF SUIT CLAUSE**    Underwriters hereby appoint the following as their agents for the service of process in all actions and proceedings arising from or relating to this policy of insurance:

CLAYMAN & ROSENBERG
305 Madison Avenue – Suite 1301
New York, New York 10165

All papers served upon said agents should be directed to the attention of Seth L. Rosenberg, Esq.

**CHOICE OF LAW AND FORUM SELECTION CLAUSE**    All actions and proceedings arising out of or relating to this policy shall be commenced exclusively in the United States District Court for the Southern District of New York or in the Supreme Court of the State of New York for the County of New York.

Notwithstanding anything contained herein to the contrary, this contract of insurance shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made therein without regard to conflict of laws principals. All actions and proceedings arising out of or relating to this policy shall be governed by, and determined in accordance with, the laws of the State of New York.

**SURVEY**    Should a survey be required, appropriate surveyors will be appointed.

# CHAPTER VIII: PARTICULAR CONDITIONS
# POLICY No. 200.683*6

| | |
|---|---|
| **DURATION AND CANCELLATION** | In exception to paragraph 7.6. "Duration and Cancellation" of the General Conditions of the Marine Cargo Open Policy of Marsh SA, this policy is a 12 months policy. |
| | However, the Underwriters and the Assured will have the facility to cancel the present policy at any time, provided notice is given to the broker Marsh S.A., one month prior to cancellation. |
| **INCEPTION** | April 1, 2006 |
| **INSURER** | Great Lakes Reinsurance (UK) PLC, via the offices of Marsh SA, Brussels, Belgium, and IJU Agency of Florida, Miami, FL, USA. |

FOR AND ON BEHALF OF
**IJU AGENCY OF FLORIDA**
ACTING AS BROKER ONLY

**MARINE CARGO OPEN POLICY**

**MARSH S.A. WRITTEN PARTICULAR CONDITIONS OF 1.1.89**

# TABLE OF CONTENTS

**P.**

**CHAPTER I    :    OBJECT AND SCOPE OF THE INSURANCE**

1.1.    Applicable Goods ................................................................. 2.
1.2.    Goods Held Covered............................................................. 2.
1.3.    Date of Attachment .............................................................. 2.
1.4.    Maximum ........................................................................... 3.

**CHAPTER II    :    TIME AND PLACE OF THE INSURED RISKS**

2.1.    Duration of Risks ................................................................ 4.
2.2.    Voyages.............................................................................. 4.
2.2.1.   Means of Transportation....................................................... 4.
2.2.2.   Redirected Consignments...................................................... 4.
2.2.3.   Quarantine.......................................................................... 5.
2.3.1.   Sojourn Risks...................................................................... 5.
2.3.2.   "Extended Cover" Convention ................................................ 6.

**CHAPTER III    :    INSURED VALUE**

3.1.    ........................................................................................ 7.
3.2.    Increased Value ................................................................... 7.
3.3.    ........................................................................................ 8.
3.4.    Foreign Currency ................................................................ 8.

**CHAPTER IV    :    CONDITIONS OF INSURANCE**

4.1.    Ordinary Transport Risks....................................................... 9.
4.1.1.   Deck Cargo ........................................................................ 9.
4.1.2.   ........................................................................................ 9.
4.1.3.   ........................................................................................ 9.
4.1.4.   Theft, Pilferage, Non-Delivery & Non-Arrival
         (Disappearance) of the Merchandise....................................... 10.
4.1.5.   ........................................................................................ 10.
4.1.6.   Abandonment - Third Party Claims ........................................ 10.
4.1.7.   Transport and Sojourn Risks on Land ..................................... 11.
4.1.8.   ........................................................................................ 12.
4.1.9.   "Seaworthiness Admitted" Clause ......................................... 12.

4.1.10.   Clauses of Bills of Lading ......................................................... 12.
4.1.11.   Subrogation ............................................................................. 13.
4.1.12.   Loss during Loading and Unloading........................................ 13.
4.1.13.   Collision .................................................................................. 13.
4.1.14.   Faulty Stowage ....................................................................... 13.
4.1.15.   Waiver of Subrogation against the Assured in his
          Chartering Capacity ............................................................... 13.
4.1.16.   Interruption of the Voyage and/or Transhipment(s)
          following an Accident affecting the Means of Conveyance ......... 13.
4.1.17.   Exclusion of Risks of War, Strikes, Riots, Civil Commotions
          and Terrorism ......................................................................... 14.
4.1.18.   Risk of Piracy ......................................................................... 14.
4.1.19.   Malicious Damage Risks ......................................................... 14.
4.2.      Cover of War, Civil War, Strikes, Riots and Civil
          Commotions............................................................................ 14.
4.2.1.    War, Strikes, Riots and Civil Commotions ............................... 14.
4.2.2.    ............................................................................................... 15.
4.2.3.    ............................................................................................... 15.
4.2.4.    Exclusion of Radioactive Contamination, Chemical, Biological,
          Bio-Chemical and Electromagnetic weapons, and Exclusion of
          Abandonment for Radioactive Goods.......................................... 17.

**CHAPTER V   :        OBLIGATIONS OF THE ASSURED**

5.1.      Declaration of Shipments ......................................................... 18.
5.1.1.    ............................................................................................... 18.
5.1.2.    Issue of Policies and Insurance Certificates ............................... 18.
5.1.3.    ............................................................................................... 18.
5.1.4.    ............................................................................................... 18.
5.2.      Premium ................................................................................. 19.
5.2.1.    Taxes and Duties ..................................................................... 19.
5.2.2.    "Free from any Liability for Unpaid Premium" Clause.................. 19.
5.3.      Safeguards - Subrogation - Salvage ......................................... 19.
5.3.1.    ............................................................................................... 19.
5.3.2.    ............................................................................................... 19.
5.3.3.    ............................................................................................... 20.
5.3.4.    ............................................................................................... 20.
5.4.      Subrogation ............................................................................. 20.
5.5.      Copyright................................................................................. 20.
5.6.      Salvage Charges....................................................................... 20.

**CHAPTER VI   :        SETTLEMENT OF DAMAGES AND LOSSES**

6.1.      Joint Surveys........................................................................... 21.
6.2.1.    Charges ................................................................................... 21.
6.2.2.    Salvage and Assistance Charges................................................ 21.
6.3.      Determination of the Amount of Particular Average .................... 22.
6.4.      Franchise ................................................................................ 22.
6.5.      Replacement Clause ................................................................ 22.
6.6.      Brand and Trademark Clause .................................................... 22.
6.7.      "Label" Clause ........................................................................ 23.
6.8.      Fumigation .............................................................................. 23.

| 6.9. | "Both to Blame Collision" and "New Jason" Clauses | 23. |
| 6.10. | General Average - York and Antwerp Rules | 23. |
| 6.11. | Abandonment | 24. |
| 6.12. | Series | 24. |
| 6.13. | Sale in course of Transit | 24. |

## CHAPTER VII  :   SPECIAL DISPOSITIONS

| 7.1. | "Leadership" Clause | 25. |
| 7.1.1. | Principle | 25. |
| 7.1.2. | Exceptions | 25. |
| 7.1.3. | Remark | 25. |
| 7.2. | Policy of Honour | 26. |
| 7.3. | "Equivalence" Clause | 26. |
| 7.4. | Service Of Suit Clause (U.S.A.) | 26. |
| 7.5. | Choice of Law and Forum Selection Clause | 26. |
| 7.6. | Intermediary and Domiciliation | 27. |
| 7.7. | Duration and Cancellation | 27. |
| 7.8. | Time Bar Clause | 27. |
| 7.9. | Examination Under Oath Clause | 28. |
| 7.10. | Fraud Clause | 28. |
| 7.11. | Notice of Changes / Brokers | 28. |
|  | Handwritten Clauses (01.10.1940) | 29. |
|  | Agreement "A" | 30. |

## CHAPTER VIII :   PARTICULAR CONDITIONS

--o0o--

# INTRODUCTION

Be it known that :

On the preceding General Conditions of the Antwerp Marine Policy of July 1st 1859, together with the Clauses 1900 (amended in 1931) and the Particular Clauses following hereinafter the Subscribing Insurers, hereinafter called "the Insurers", guarantee separately and respectively the sums mentioned by each of them to :

See Particular Conditions, Chapter VIII.

hereinafter called "the Assured", acting on his own behalf as well as for and on behalf of his affiliated and/or associated companies and/or of whomsoever it may concern.

The purpose of the following contractual Special Provisions and Particular Conditions is to specify and complete the General Conditions of the Antwerp Marine Policy of July 1st 1859, Clauses 1900 (amended in 1931) and the official clauses relating thereto.  They cancel and replace them in so far as they differ therefrom.

# CHAPTER I : OBJECT AND SCOPE OF THE INSURANCE

1.1.    **APPLICABLE GOODS**

Coverage is afforded to lawful goods and/or merchandise in which the Assured has any insurable interest whatsoever as Owner, Agent or Consignee and/or in any other capacity. However, notwithstanding the foregoing or anything to the contrary in this policy, merchandise owned by others for which the insured is neither the buyer nor seller shall not be covered goods under this policy unless: 1) the Assured has received the order to insure such goods without foreknowledge of claim and 2) the insured has expressly identified himself to Underwriters as a freight forwarder or as a person in the business of facilitating the shipments of goods belonging to third parties in either the application for insurance or in a subsequent writing, provided however, that such notice by subsequent writing shall have no effect unless and until acknowledged by Underwriters in an endorsement to the policy

Excluded from coverage under this policy is any merchandise for which, either by the conditions of sale or purchase or under the terms of a previous agreement conflicting with the present conditions, it has been provided that the insurance shall not be entrusted to the Assured. Nevertheless if he has any interest whatsoever in the merchandise, the Assured will be able to declare this under the present policy if he chooses not to accept the insurance concluded by his vendor or buyer and to do so as soon as he has knowledge thereof and, if possible, before attachment of risk.

1.2.    **GOODS HELD COVERED**

The Assured remains covered by the present policy for all merchandise and/or voyages not provided for in the rates mentioned hereinafter, but for which the risks lie with him.

Premiums and conditions will be arranged case by case or, in the absence of amicable agreement, by arbitration.

1.3.    **DATE OF ATTACHMENT**

Shipped or to be shipped as from (See Particular Conditions, Chapter VIII) at 00.00 hours (local time of the region where the Assured's interest originates) to an unspecified date.

1.4.    **MAXIMUM**

An amount to be determined, without however exceeding a maximum per conveyance stipulated in the Chapter VIII of this policy.

It has been agreed that, if the total value at risk exceeds the maximum as set out in this policy, the Assured will nevertheless declare the same to the Insurers as soon as he has knowledge thereof and will pay the corresponding premium. The insurance will then be considered a "first risk" cover up to the amount of the maximum covered.

Each building, bonded warehouse or physically different place of storage will be considered a separate risk.

The maximum, as defined above, constitutes the limit of the Insurers' liability for the settlement of particular average and of total loss.

Regarding the application of the aforementioned limit, the value of consignments declared in another currency will be converted into the currency of the above-mentioned limit according to the official rate of exchange on the day of attachment of risk. These consignments will remain covered for the insured amount in the currency in question, irrespective of any fluctuations in the rate of exchange which might subsequently occur.

# CHAPTER II : TIME AND PLACE OF THE INSURED RISKS

2.1.  **DURATION OF RISKS**

The risks to be borne by the Insurers, which in no case will be deemed to extend to goods in the process of manufacture, will attach at the moment the merchandise, is completely loaded on the means of transportation and will continue without interruption and for an unlimited period whether or not any prolongation of the risk that may occur is the fault of the Assured, until delivery and discharge at the final destination mentioned in the certificate, whatever the terms of the certificate agreed between the Assured and his supplier (e.g. FOB, C&F or the like) might be.

In respect of unsold merchandise, the Insurers' risks will terminate on arrival and delivery into the warehouse of the consignee at the final point of destination.

Regarding merchandise sold FOB or C&F, the insurance remains in force until completion of loading including stowage of the insured cargo.

Moreover, the unpaid vendor remains covered for the entire voyage up to the final destination mentioned in the certificate, subject to payment of an additional premium where necessary and provided that the related insurance declaration has been made before the attachment of risk.

2.2.  **VOYAGES**

See Particular Conditions, Chapter VIII.

2.2.1.  **Means of Transportation**

By ship(s) to be declared, carrying whatever flag, in accordance with the "Institute Classification Clause" effective at the date of loading the sea vessel, and/or aircraft and/or train(s) and/or barge and/or lorries and/or any other conveyance(s), whatsoever.

2.2.2.  **Redirected Consignments**

a.  Merchandise redirected to a destination other than that originally designated in the insurance declaration, the certificate and/or the policy of regularisation

whatever the place of destination of the merchandise might be, according to the bill of lading or any other transport document and/or policy, the risks of redirecting and sojourn wheresoever, from the said place to the final actual destination where the merchandise is to be delivered, remain legally included in the insurance cover, even if the policy and/or notification should not mention any such redirection.

This final destination shall replace that mentioned in the bill of lading and/or policy or declaration. The insurance shall thereby be maintained without interruption and for an unlimited period until final expiry of the risks, subject to payment of an additional premium if required.

The Assured undertakes to notify the Insurers of any such modifications as soon as they are known to him.

b. Returned merchandise :

   i)  that which has not been taken delivery of and/or delivered to the warehouse and/or registered address at the final point of destination, i.e. without termination or interruption of the risks borne by the Subscribing Insurers :

       in this case the stipulations of para a. of this clause are fully applicable, even without previous notification.

   ii) after reception and/or delivery at the final point of destination, i.e. after interruption of the risks borne by the Subscribing Insurers :

       in this case, before the commencement of the return voyage, an assessment of the condition of the goods has to be made, in accordance with the "intervention in case of loss and introduction of claim" clause, by the Survey agent mentioned in the policy and/or by the Lloyd's of London Agent or, in the absence thereof, by the Consul of Belgium, France, the U.K. or U.S.A.

       Should damage and/or loss of merchandise be ascertained, the insurance of the goods regarding transport and sojourn risks for the return voyage will be concluded at rates and conditions to be agreed case by case and/or, should no amicable settlement be reached, by arbitration.

2.2.3.  **Quarantine**

In so far as it might be useful, for clarification purposes, in respect of the terms of para d) of Clauses 1900 (amended in 1931), it is agreed upon that Insurers shall remain liable, without interruption of risks, in accordance with the written conditions of this policy, for all and any sea-, river- or landrisk, during quarantine or measures originating therefrom or resulting from quarantine orginating or not from clauses of charter-parties or bills of lading.

2.3.1.  **Sojourn Risks**

Whatever relates to attachment and termination of risks in Clause 2.1. is generally applicable.

Failing any stipulation to the contrary in the pages of the tariff of the present policy, the terms of the clause in question will govern the attachment and termination of risks.

However it remains well understood that regarding all sojourn risks, whether or not they result from the doings of the Assured or his principals, whereof the duration should exceed thirty days per separate sojourn risk, the Subscribing Insurers may

claim an additional premium, the rate to be agreed upon case by case. This additional premium shall be applicable per indivisible commenced period of 15 days.

This clause is valid for sojourns before shipment of the merchandise on board the sea-going vessel and after unloading.

The Assured undertakes in good faith to inform Marsh S.A. of any sojourn that separately would exceed the said period of thirty days as soon as it is known to him.

2.3.2.    **"Extended Cover" Convention**

The provisions of Clauses 2.1. and 2.3.1. above relative to the cover of the risks after unloading from the sea-going vessel can be invoked only by the Assured mentioned by name in the present policy and in so far as his interest in the merchandise still exists; the provisions of the "Extended Cover" Clause (Feb. 1st 1956 of the Belgian Association of Marine Insurers) set out immediately below (in free translation) remain valid in respect of any other beneficiary.

"Notwithstanding anything to the contrary in the printed and/or handwritten clauses contained in the present policy, the provisions mentioned hereafter shall be applicable:

the Insurers' risks terminate at the arrival of the merchandise in the consignee's warehouse or any other final warehouse at the point of destination mentioned in the certificate.

Nevertheless, in so far as the merchandise is still in the normal course of transport and has not yet reached the final warehouse as stipulated above, the guarantee shall continue to run for a period of 60 days after the merchandise has been unloaded from the sea vessel at the final port of discharge.

Any extension of the guarantee exceeding this period must be applied for from the Insurers, either at the acceptance of the risk, or prior to the expiry of the above-mentioned period of 60 days. This prolongation may be granted by the Insurers subject to payment of an additional premium".

# CHAPTER III : INSURED VALUE

3.1.    The insured value shall be determined on the basis of the full amount of the invoice including all expenses in connection with loading on board the vessel. It shall also comprise all advances of freight as well as acquired freight paid in advance or due, ship lost or not lost. Insurers are liable for any loss of or damage to the acquired advances of freight and the merchandise itself.

The Assured may include in his definitive value declarations such anticipated profit as he may wish, without further justification. Any difference between invoice and the insured value will be considered by the Insurers to be a replacement value and/or anticipated profit. But in event of loss or arrival before the final fixation of value as above, this shall be arranged as follows : the basis shall be the invoice value, plus insurance premium, freight advance, acquired freight and expenses up to loading aboard, the total of which being increased by the percentage of anticipated profit usually insured on similar merchandise and voyages, albeit limited to 25 %.

The insurance of customs' duties and freight payable at destination shall be subject to a separate entry on the insurance declaration and be rated at 50 % of the main premium.

The insurance of customs' duties and/or freight payable at destination shall be effective only in so far as these become claimable. It guarantees to the Assured all loss relating thereto, namely in case of particular average to the goods at destination; in such a case reimbursement of the damage will be made on the freight and customs' duties under the same conditions as those valid for the goods.

3.2.    <u>INCREASED VALUE</u>

The Assured has the possibility of lawfully declaring under the present open policy any insurance(s) he deems to be insufficient, which he may wish to cover in his own name or for name or for and on behalf of his clients or correspondents, always provided that the Assured must make these declarations within 72 hours following receipt of the documents allowing him to check whether (or not) he needs to insure an excess.

Mention is also made that, in the event of any claim prior to declaration, the Insurers' liabilities remain binding, though with the following restrictions :

a.    <u>if the merchandise is sold</u> :

the Assured may cover only the difference between the vendor's invoice, including all expenses up to loading on board, and the purchaser's invoice.

b.    <u>if the merchandise is not sold</u> :

the Assured may cover only the difference between the vendor's invoice, including all expenses up to loading on board, and the market value at the port of

unloading on the day the merchandise is bonded.

Before knowledge of damage, the Assured may, at his discretion, cover any difference. This increased value will be assured lawfully under the policy conditions covering the merchandise.

3.3.    The above conditions (3.1. Insured Value / 3.2. Increased Value) do not prejudice the provisions under 1.4. Maximum. The maximum amount as defined there represents the limit of the Insurers' liabilities regarding the settlement of particular average and total loss.

3.4.    **FOREIGN CURRENCY**

Notwithstanding any provision to the contrary and particularly in Article 193 of the Commercial Code, it is hereby explicitly agreed that premiums and claims are payable in the currency actually mentioned in the insurance declaration and the corresponding policy.

# CHAPTER IV : CONDITIONS OF INSURANCE

4.1.    **ORDINARY TRANSPORT RISKS**

The goods covered under this policy are insured both afloat and on land under the conditions and at the rates mentioned hereinafter :

(see Particular Conditions, Chapter VIII)

In the absence of explicit instructions specifying the cover, which is usually accepted for a similar merchandise or voyage will be applicable or, failing this, the widest cover set out in this policy for a similar category of merchandise.

4.1.1.    **Deck Cargo**

When goods, with the exception of those loaded into containers, are carried on deck of the vessel, they fall under this policy insured Free of Particular Average and of Abandonment on account of loss or deterioration for three-quarters of the value, unless average, loss or deterioration are caused by shipwreck, stranding, jettison, fire, being washed overboard or breakage consequent upon shifting of cargo. In these cases, losses are reimbursable however small they may be, and the right to abandonment is retained.

The premium rates applicable in such cases are to be agreed upon case by case or, should no amicable agreement be reached, by arbitration.

However, if such loading has been carried out without the shippers' consent, the merchandise remains covered as per conditions provided for in the policy for shipment under deck.

Shipments on deck per inland craft remain covered at rates and under the conditions provided for by this policy for loads carried in the hold.

4.1.2.    Spontaneous combustion is assimilated to fire risk.

4.1.3.    The presence on board the conveyance of armed or unarmed military forces, under command or not, shall in no case be construed as a war risk.

4.1.4.  **Theft, pilferage, non-delivery & non-arrival (disappearance) of the merchandise**

As far as the Assured, the holder of this policy, is concerned, any loss resulting from theft and/or plundering, either partial or of entire packages, in the course of the voyage and/or during the sojourn of the merchandise in any place on land and afloat, will always be reimbursed in full, however small it may be, in all circumstances and regardless of the insurance conditions and whether the merchandise has been specially guarded or not.

Non-delivery of entire packages is assimilated to theft and to be paid as such, provided the Assured, within the statutory time limits, has taken all such measures as will facilitate the Insurers' subrogation where necessary.

In the event of non-delivery of one or more packages or if one or several railway wagons, trucks, barges or airplanes should not have arrived at destination, abandonment of the merchandise can be claimed after the expiry of a two-month period starting from the expected date of arrival.

The Assured shall advise Marsh S.A. of such events, as soon as they become known to him, in order that the necessary steps may be taken with regard to the carriers responsible.

4.1.5.  Natural loss is abolished.

4.1.6.  **Abandonment - Third Party Claims** (without prejudice to clause 4.2.4)

Compulsory paramount clause of 1st August 1973 of the "Belgian Association of Marine Insurers".

1.  Abandonment :

notwithstanding any contrary legal and/or contractual provision :

a.  the insurance of any radioactive goods prior to the attachment of risk is concluded "free from abandonment";

b.  as to goods which become radioactive after the attachment of risk, the Insurers shall always be entitled to choose between the acceptance of abandonment and settlement in total loss without transfer of ownership;

c.  as to goods whose nature is recognized as being particularly dangerous to third parties, the Insurers, in case of abandonment, reserve the right to refuse transfer of ownership of the damaged merchandise.

It is understood, however that all other conditions and consequences of abandonment shall remain applicable.

Disputes arising between the Insurers and the Assured on the wording of para. 4.1.6.1. shall be submitted to a panel of three arbitrators. Each of the parties involved shall appoint one, the third being appointed by the two so nominated.

They will all be appointed according to the procedure provided for under Article 14 of the Marine Insurance Policy of Antwerp in respect of arbitration.

The Insurers shall pay to the Assured the insured value of the goods within the period laid down in case of abandonment and irrespective of the procedure mentioned above.

If the Insurers refuse transfer of ownership of the damaged goods, they will be entitled to reimbursement of the possible salvage value after deduction of the expenses incurred by the Assured.

2. Third Party Claims :

this insurance does not cover any claim for regress which a third party could file as a consequence of losses and/or damage whatsoever caused by the goods and/or objects insured.

However, in case of liability of the Insurers toward third parties for any damage caused damages goods whose ownership has been transferred, said liability shall commence from the time when ownership has been transferred to them.

4.1.7.    **Transport and Sojourn Risks on Land**

Regarding transport by railway and/or overland, as a clarification of the wording of para. e) of Clauses 1900 (amended in 1931), it is agreed that under the terms "Collapse of bridges, buildings, rails, tunnels or other railway structures" the cover for such accidents remains in force, whether private or public buildings or those belonging to any railway company whatsoever are concerned.

It is further stipulated that "Flood Risks" shall mean the penetration of water into premises or onto land which it does not usually cover.

Regarding the risks of fire, lightning and/or explosions of any kind while the merchandise remains in a warehouse and any place whatsoever on land, it is understood that, if at the same time one or several policies should exist which cover the insured interest against fire risks, under which damage to this merchandise should be applicable, the Insurers are bound to pay in full any balance of loss not covered under those policies.

Settlement in respect of damage shall be made in accordance with the survey report drawn up by the Fire Insurers and without taking into account the dates of the policies intervening on both sides.

If for any reason whatsoever these special fire insurance contracts should be considered null and void, invalid or impracticable, the present policy shall retain its full and complete effect regarding risks of fire, lightning and/or explosions of any kind.

The above-mentioned provisions will be applicable only when fire risks have not been excluded; they are limited by the maximum provided for in the present policy.

4.1.8.  The Marsh S.A. handwritten Clauses of 1 October 1940 attached hereto constitute an integral part of the cover under the conditions of Art. 10 of Clauses 1900 (1931) of the Antwerp Marine Insurance Policy of 1859.

4.1.9.  **"Seaworthiness Admitted" Clause**

4.1.9.1.  The seaworthiness of the sea vessels, barges and/or any other means of conveyance is admitted between Assured and the Insurers, even if the contract of affreightment has been made by the Assured.

Unseaworthiness shall not be attributable to any fault of the Assured and shall in no way prejudice the insurance cover, unless the Insurers establish that the Assured had knowledge thereof before the beginning of the voyage.

4.1.9.2.  The Insurers waive the right to invoke Art. 206 of the Maritime Law (Book II, title 6); on the contrary, Art. 16 of the Insurance Law remains applicable as follows :

"no loss or damage caused by the action of or by serious error on the part of the Assured shall be chargeable to the Insurer, who may even retain or claim the premium amount if his risk is already attached."

The wording "action of or by serious error on the part of the Assured" must be interpreted as an act by responsible leaders such that the consequences thereof must be considered those of a deliberate act.

4.1.10.  **Clauses of Bills of Lading**

By extension of the terms of para. g) of Clauses 1900 (amended in 1931), it is agreed that the Insurers accept aggravations of risk which could result from any printed, handwritten or stamped clauses, and also from any conditions, possibility of restrictions or reservations inserted in the bills of lading, charter-parties or any other receipts delivered by carriers; this aggravation of risk shall not prejudice the insurance.

This shall also be valid regarding any regulations and/or contracts with regard to sojourns, warehousing, depositing, handling of the merchandise, of whatever nature they may be.
If the bills of lading are signed by the ships' agents, these signatures shall be equivalent to those of the ships' captains in connection with any possible dispute between the Assured and the Insurers.

Only "serious error on the part of the Assured" could, if required, be invoked by the Insurers as grounds for possible release from their liability, however, under reservation of the Assured to appeal to all means of proof in similar circumstances.

4.1.11.   **Subrogation**

The Insurers waive the right to any subrogation and/or any claim against the Assured on account of fraud or negligence on the part of captains of barges or of infringements by them of the Inland Navigation Regulations.

4.1.12.   **Loss during Loading and Unloading**

Any total and/or partial loss and/or damage caused by loading, unloading and/or possible transhipment operations shall be reimbursed irrespective of percentage, without taking into account franchises or series provided for in the policy, when they result from failing into the water and/or on the quay and/or on the means of conveyance.   It is understood and agreed that this clause applies only when the merchandise is in transit and does not apply when the goods are in the warehouse or have arrived at destination.

4.1.13.   **Collision**

Collision with a fixed or floating object is assimilated to the cases provided for by Art. 10, in so far as the damage results therefrom.

4.1.14.   **Faulty Stowage**

a)  Clause applicable in respect of an "All Risks" policy :

"Any average, loss or depreciation resulting from any fault or lack of care in stowage, in loading or discharge operations are for Insurers' account, even in the case of affreightment or transport on an "FIO Stowed" basis or any other clause of this kind."

b)  Clause applicable in respect of an "Article 10" or "FPA" policy :

"Any average, loss or depreciation resulting from any fault or lack of care in stowage are for the Insurers' account."

4.1.15.   **Waiver of Subrogation against the Assured in his Chartering Capacity**

The Insurers undertake to abandon any subrogation against the Assured in his capacity as charterer.

4.1.16.   **Interruption of the Voyage and/or Transshipment(s) following an accident affecting the means of conveyance**

If, as a result of an event covered by the policy, the insured merchandise cannot continue the voyage, or if, as a result of any accident covered by the policy, it has to be transshipped, any extraordinary expenses whatsoever which may result therefrom, such as difference in freight, expenses due to loading on board, the cost of transshipment, etc., shall be entirely for the Insurers' account.

The same holds for survey fees and/or any other expenses resulting from an event covered by the policy.

It is agreed that, in case of damage before loading of the merchandise to be forwarded is completed, the indemnity shall be calculated on the quantity loaded at the time of the accident.

4.1.17. **Exclusion of Risks of War, Strikes, Riots, Civil Commotions and Terrorism (Clause of the A.B.A.M. dated December 19, 2002 – modified on 26th June 2003)**

Unless otherwise explicitly agreed this insurance does not cover loss damage or expense directly or indirectly caused by or contributed to by or arising from :

1. war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power;
2. capture, seizure, arrest, restraint or detainment, arising from risks mentioned under 1. above, and the consequences thereof or any attempt thereat;
3. derelict mines, torpedoes, bombs or other derelict weapons of war;
4. other war risks as defined in the Belgian Law or in the Antwerp Marine Insurance Policy;
5. strikes, riots, civil commotions, lock-out or strife arising out of labour disturbances;
6. terrorism or any politically motivated action.

4.1.18. **Risk of Piracy**

If the risk of piracy is not covered elsewhere, it may be added at the request of the Assured and against payment of an additional premium.

4.1.19. **Malicious Damage Risks (Clause of the A.B.A.M. dated October 1, 1986)**

If the risks of malicious damage are not covered elsewhere, they may be added at the request of the Insured and against payment of an additional premium.

4.2. **COVER OF WAR, CIVIL WAR, STRIKES, RIOTS AND CIVIL COMMOTIONS**

By derogation, as far as is useful, to the above-mentioned clause "Exclusion of Risks of War, Strikes, Riots, Civil Commotions and Terrorism", the Subscribing Insurers accept the cover of these risks, under the present contract, on the basis of the following conditions :

4.2.1. **War, Strikes, Riots and Civil Commotions**

For the risks of war and civil war, in accordance with the clause "Risques de Guerre pour le Transport Maritime de Facultés" of the A.B.A.M. in force on the day of the attachment of risk, without prejudice to the provisions set out in Clause 4.2.3.

Moreover, the following clause forms part of the present policy in all cases and every time that the coinsurance and/or the insured capital are not the same for the insurance of the war risks as for the cover of ordinary risks :

"If, in case of claim, a disagreement should arise regarding its nature (war risk or ordinary risk), the Insurers will settle the loss without having recourse to appeal under the terms of Art. 203 of the Maritime Law, or concerning differences that may exist between the present "War Policy" governed by the Belgian Legislation on the one hand and the Legislation and customs that rule the assurance of ordinary risks concluded on the other hand. However, the following exception applies should the said Insurers, after payment, be subrogated in the rights of the Assured against the Insurers of the ordinary risks; however, the exercise, if any, of the subrogation shall be for the risk and account of the Subscribing Insurers."

It remains understood that each claim, whatever the insurance conditions may be, is presumed to be attributed to the realization of an ordinary risk. Evidence to the contrary, viz. that it concerns a war risk, is for the account of the Insurers.

4.2.1.1.  Acts of the Prince are assimilated to War Risks.

4.2.1.2.  By derogation to Art. 202 and following of the Belgian Maritime Law, it is explicitly agreed that the contract shall not be cancelled and that the Insurer of the Ordinary Risks shall continue to cover these (perils of the sea and others) in conformity with the conditions of the present policy, even if an event of war should modify the conditions of the voyage.

4.2.2.  In respect of the risks of strikes, riots and civil commotions, the insurance shall provide cover in accordance with the "Strikes and Riots Risks" Clause of the A.B.A.M. - or any other clause of the A.B.A.M. relating to the same subject - in force on the day of the attachment of risk, and does so without prejudice to the provisions of Clause 4.2.3.

The clauses dated March 15, 1952 (Institute Strikes Clause Extended Cover) shall be applicable to shipments bound for the Zaire Republic, the Rwanda Republic and the Burundi Republic.

4.2.3.  In respect of the Risks of War, Strikes and Riots, the Insurers are entitled to :

a)  modify the premium rate at any time and without prior notice.
The applicable rates shall be the lowest in force according to the official scale of the "Institute of London Underwriters" at the date of the attachment of risks or, in the event of risks accepted prior to the departure of the shipment, the rate applicable at the date of the declaration of the insurance order, however on condition that the departure of the sea vessel shall take place within the period of 7 days laid down for the validity of "War, Strikes and Riots" rates.

In respect of shipments applicable under the present policy, and in the event of their date of departure being unknown at the moment of the declaration, it is agreed that this order shall be considered to be automatically renewed daily so as to remain valid also during the following days, up to departure within 7 days. Thus a rate increase could affect this declaration only, in so far as the departure should not take place within 7 days after the date of an intervening modification of the tariff.

b) in respect of the applicable conditions, either to modify them or to completely cancel the cover of the Risks of War, Strikes and Riots, subject to notice of cancellation of seven days, to take effect from the moment such notice shall reach the Assured's office.

(Regarding the Risks of Strikes and Riots in connection with shipments to and from USA, the period of notice is fixed at 48 hours).

However, when an additional premium has been fixed according to modified conditions of cover, then this additional premium entails the immediate application of these other conditions without prior notice.

i) If, regarding certain shipments, insurance against the Risks of War, Strikes and Riots is not required, the provisional or definitive declaration of these shipments must be made before the commencement of loading operations, with the explicit mention "Risks of War, Strikes and Riots excluded".

ii) The Insurers explicitly agree that, notwithstanding the possible insertion in the present contract of the English "Institute War Clauses" and/or "Institute Strikes, Riots and Civil Commotions Clauses" in force, and their inclusion in the regularisation policies, insurance confirmations, certificates or any covering documents issued in conformity with this contract, the Assured shall have the possibility, in case of claim, of requesting the reimbursement of damages falling within the categories of risks, either on the basis of the English clauses mentioned above, or on the basis of the corresponding clauses in French of the "Association Belge des Assureurs Maritimes".

iii) Shipments for which the Assured, in accordance with the sale or purchase contracts, is insured only against the Risks of War, Strikes and Riots and for which the ordinary transport risks are insured elsewhere, in accordance with the said sale or purchase contracts, are automatically applicable to the present policy and all clauses and conditions thereof.

In this case, the assumption exists that a claim shall be attributed to an event of war, and evidence to the contrary shall have to be provided by the Insurers.

iiii) In all cases relating to the conditions set out in para. 4.2. and following, in case of doubt or disagreement regarding the nature of the claim (ordinary risk or war risk), there exists in accordance with the present policy an assumption that the claim is to be attributed to an ordinary risk and evidence to the contrary shall have to be provided by the Insurers. On the other hand, when the War (and, in accordance with the A.B.A.M. clause assimilated) risks are covered solely by the present open policy, there is assumption of liability of the claim to a war risk, and, evidence to the contrary shall be provided by the Insurers.

4.2.4. **Exclusion of Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons, and exclusion of Abandonment for Radioactive Goods**

This clause shall be paramount and shall override anything contained in the law and/or in this insurance inconsistent therewith.

1.  In no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from

    1.1 ionizing radiations from or contamination by radioactivity from any nuclear fuel or from any nuclear waste or fro m the combustion of nuclear fuel

    1.2 the radioactive, toxic, explosive or other hazardous or contaminating properties of any nuclear installation, reactor or other nuclear assembly or nuclear component thereof

    1.3 any weapon or device employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter

    1.4 the radioactive, toxic, explosive or other hazardous or contaminating properties of any radioactive matter. The exclusion in this sub-clause does not extend to radioactive isotopes, other than nuclear fuel, when such isotopes are being prepared, carried, stored, or used for commercial, agricultural, medical, scientific or other similar peaceful purposes

    1.5 any chemical, biological, bio-chemical or electromagnetic weapon.

2.  This insurance is always free from abandonment for all radioactive goods even if they became radioactive after inception of the risks."

# CHAPTER V : OBLIGATIONS OF THE ASSURED

5.1. **DECLARATION OF SHIPMENTS**

The Assured agrees in good faith to declare exclusively to this open policy, through International Jewelers Underwriters Agency Ltd., any shipments as defined under 1.1. and 1.2. hereabove, both in respect of the total value of these shipments and of all increased values for which the assurance may have been entrusted to him.

5.1.1. The insurance orders shall contain all useful information and/or details concerning the shipments and shall be sent to International Jewelers Underwriters Agency Ltd. immediately upon receipt of documentary evidence.

5.1.2. **Issue of Policies and Insurance Certificates**

Upon proper and timely declaration by the Assured to Marsh SA, the Assured will be issued special insurance certificates numbered and printed in his name by order and on behalf of the Insurers, in accordance with the wording adapted to the different types of guarantee provided by this policy. The declarations may be made to International Jewelers Underwriters Agency Ltd., who is authorized to issue the special insurance certificates acting as broker only.

5.1.3. The policies, certificates or other documents of regularisation can be issued in the name of the leading company of the present policy, acting by proxy of all interested co-insurers. A copy of these documents shall be sent to Marsh S.A. immediately after issue. Notwithstanding the fact that the policies will be so issued in the name of a single company, the co-insurance of the present contract shall remain in force, so that all the interested companies shall maintain their respective share on the basis of the percentages mentioned in the contract.

5.1.4. Notwithstanding anything in this policy to the contrary, it is a condition precedent to any claim under this policy that the insured immediately notify Underwriters upon the discovery of circumstances which lead or should reasonably lead the insured or its agents to believe that a cargo container containing insured goods has been tampered with, pilfered or damaged in the course of transit. The circumstances requiring such immediate notification shall include but not be limited to: broken shipping seals; visible signs of damage and any unexplained decrease in the net weight of a container. Upon the discovery of such circumstance, the insured shall not take, authorize or permit any actions to be taken with respect to the container or its contents, included the opening of the container and the counting of its contents, except in the presence of a representative of Underwriters, unless Underwriters expressly waive such requirement in writing.

As used in the foregoing paragraph, that term "container" shall mean a cargo container or any other means of conveyance of insured goods.

5.2. **PREMIUM**

The full premium is acquired by the Insurers as soon as the risks have been attached. Premium payment is due in full upon issuance of the insurance certificate and will be paid to insurers from the premium deposit account or by the assured no later than 10 days of billing. The insurers reserve the right to rescind coverage from inception, even in the event of a claim if the premium is not timely paid, the Premium Deposit Account has a negative balance or any payment by the Assured is stopped or returned.

It is to be settled cash to Marsh S.A. on receipt of the premium account.

5.2.1. **Taxes and Duties**

Any existing or subsequently imposed taxes or duties, as well as the cost of the policy, are payable by the Assured under the same conditions as the premium.

5.2.2. **"Free from any Liability for Unpaid Premium" Clause**

The certificates and policies declared under the present policy may mention the Clause "Free from any Liability for Unpaid Premium", or any other similar clause; however, it is understood that this clause shall in no way invalidate the Assured's obligation to pay the premium to the Insurers.

5.3. **SAFEGUARDS - SUBROGATION - SALVAGE**

5.3.1. The Assured undertakes in good faith, with due diligence, to take any safeguards to see or proceed with the salvage of the insured objects and to cooperate full with the Insurers by helping to carry out any measures which they themselves have taken or caused to be taken to this end.

5.3.2. The Assured also undertakes to take, in due time, any measures necessary to safeguard his rights and subrogation against the carrier and all other liable third parties.

When the Assured's proxy justifies the circumstances rendering it impossible (for him) to take the desired steps with a view to safeguarding the right of subrogation against liable third parties, the Insurers waive the possibility of presenting any objection of non- receivability or loss of rights which could be brought against the Assured. The Insurers also renounce the right to claim for any compensation which they might legally claim from him in view of the absence, the irregularity or delay in making the reservations.

After submitting his claim to the Insurers, the Assured has no further obligation to attend to the suspension or interruption of possible periods of prescription in favour of responsible third parties; nevertheless, he shall cooperate fully with the Insurers, if these should request him to do so.

5.3.3.    The Subscribing Insurers waive any objection of non-receivability which they might present against the Assured who, within the required period, has not made the protests of taken court actions provided for in Articles 266 (232) and 267 (233) of the Commercial Code, as well as in Articles 7 & 8 of the Law of August 8, 1891 on the Contract of Transport.

5.3.4.    Indemnities received from any responsible person to the benefit of the Assured or the parties entitled to the insurance-indemnity shall be deducted by the Insurers from the sums due, in proportion to each party's respective interests.

5.4.    **SUBROGATION**

The Insurers, after payment of the insurance indemnity, are vested into all rights and subrogation of the Assured against any responsible persons.

The Assured undertakes, if the Insurers so request, to reiterate this subrogation by separate document.  This subrogation is valid up to the insurance indemnity paid.

Except for explicit derogation, in case of settlement of the damage or loss by transaction, the subrogation shall be paid first to Insurers up to the indemnity paid then any excess to the assured; however, the Insurers shall execute the action of recourse for the whole, with the full cooperation of the Assured.  The insurers have the sole and exclusive authority to settle, sue or compromise the subrogation claim.

5.5.    **COPYRIGHT**

The Assured hereby pledges that under no pretext shall he communicate this contract or extracts therefrom to third parties, whoever they might be, without the prior consent of Marsh S.A.

5.6.    **SALVAGE CHARGES**

The present policy also covers, for that part of the voyage effected by inland barge, any possible salvage charges in respect of the damaged cargo.  In view of the fact that the Insurers will accept the abandonment of the goods in case of shipwreck of the barge, no
additional premium shall be due by the Assured to the Insurers to compensate them for the losses that acceptance of the present clause could possible involve them in.

The application of this clause in no way constitutes a restriction of the provisions of clause 4.1.6. "Abandonment Third Party Claims".

# CHAPTER VI : SETTLEMENT OF DAMAGES AND LOSSES

6.1.    **JOINT SURVEYS**

In case of loss and/or claim, the Assured and/or Consignees shall preferably apply either to the claims' Agents mentioned in the policies and/or certificates or to the Lloyd's of London Agent, or, failing such, to the Consuls of Belgium, France, the U.K. or the USA or, failing such, to the local competent authorities and shall also as soon as possible advise Marsh S.A.

In case of losses or damage reasonably estimated not to exceed US$ 750,- or the equivalent in any other currency, the Assured is exempted from calling upon the surveyors.

If, at any time, the damage should exceed this amount, the Assured shall nevertheless be obliged to call on the surveyor.

All parties reserve the right to request, within 15 days counting from the day of receipt of the survey report, an amicable or judicial counter-survey which shall be carried out between them after due hearing of both parties.

6.2.1.    **Charges**

Any charges approved by the Insurers' surveyor, with the aim of surveying the averages or preventing them, as well as the fees of the Insurers' agents, shall be in full for the Insurers' account, even in those cases in which the said material averages should not be recoverable under policy conditions.

This is also valid for any warehousing or redirecting expenses incurred with a view to salvaging the merchandise from an event covered by the policy as well as, also in case of financial weakness on the part of the carrier when the latter has not been chosen by the Assured, whatever the circumstances and the financial situation of this carrier might be.

These charges shall be reimbursed in the currency in which they have actually been incurred.

6.2.2.    **Salvage and Assistance Charges**

All salvage- and assistance charges are for Insurers' account. If salvage- and/or assistance charges have been incurred and no actual salvage has resulted therefrom or if these charges exceed the salvaged-value, the Insurers shall reimburse the said charges or their excess over the salvaged values, irrespective of the reimbursement to be made on the merchandise itself by abandonment or by claim for particular average. All without prejudice to the provisions of the last section of Art. 17 of the Insurance Law dated 11.6.1874.

6.3.    **DETERMINATION OF THE AMOUNT OF PARTICULAR AVERAGE**

The degree of damages determined as set out under 6.1. is assessed by comparing the value that the objects in sound condition would have had at the point of destination with their value in damaged condition; the percentage of depreciation thus arrived at will then have to be applied to their insured value.

The value of the damaged objects may also be determined, either at the request of the claimant or with his consent, by public sale.

If the conditions of sale or purchase stipulate that claims have to be settled on the basis of arbitral decisions of recognized professional organisations, the Assured has the option of claiming settlement from the Insurers on the same basis.

In the event of a compromise settlement for particular average at any stage during the voyage, by common agreement between the claimant and the Insurers' representatives, with the aim of avoiding a public sale or redirecting the damaged merchandise to its destination, the concluded transaction shall bind either party within the conditions of the policy.

6.4.    **FRANCHISE**

The franchise is to be calculated on the insured value used as a basis for settlement in conformity with the provisions under 6.3. and includes, where necessary, ordinary leakage and natural loss, if any, whether fixed by the terms of sale or purchase or by trade practices.

6.5.    **REPLACEMENT CLAUSE**

Settlements of losses and/or damage sustained by machines, motors, components, accessories and similar items shall be made without any franchise, on the understanding that, in the event of loss of or damage to a machine part that can be replaced without prejudice to this machine, the Insurers' liability shall be limited to the value of the part damaged, destroyed or lost, including expenses of dismantling, transport and reassembly; without prejudice to the Assured's right to abandonment of the remainder of the machine whenever the damage amounts to 3/4 of its value.

If the common interest requires redirection to the supplier's factory of the damaged part or of the machine, whereof it constitues a part, the cost of transportation by the same means and/or repairs and/or reconditioning and/or replacement if necessary shall be entirely for Insurers' account;

6.6.    **BRAND AND TRADEMARK CLAUSE**

In case of damage, resulting from a risk insured under this policy to merchandise and/or produce bearing the brand and/or trademark of the Assured, the salvage value of such merchandise and/or damaged goods shall, at the Assured's option, be determined after removal of all brands and/or trademarks.

The Assured shall keep the control of all merchandise and/or damaged goods and, without the Assured's consent, it shall not be possible either to sell or dispose of them by other means.

Furthermore, if the use or consumption of such merchandise and/or goods involves a danger to life or health and if they have to be destroyed, the Insurers shall settle the insured value as a total loss.

6.7.    **"LABEL" CLAUSE**

If labels should be damaged or removed and the indentifiable contents remain in sound condition, the Insurers shall pay only the cost of reconditioning and/or replacing the labels.

In the eventually that sale of the repackaged goods should be prohibited or that their destruction be imposed by local legislation settlement shall be made as a total loss.

6.8.    **FUMIGATION**

If by order of any authority the means of conveyance or the warehouses, have to be fumigated and if damage to the merchandise should result therefrom, the Insurers shall indemnify the Assured for such damage, however small, even if the insurance was concluded "Free of Particular Average".

Fumigation expenses allowed in General Average or adjusted as per charter or Bill of Lading shall be paid in full by the Insurers.

6.9.    **"BOTH TO BLAME COLLISION" AND "NEW JASON" CLAUSES**

If the merchandise is carried under a Bill of Lading including the clauses "Both to Blame Collision" and "New Jason", the Insurers agree to indemnify the Assured for any sums (up to the insured value) for which he could be liable to pay to the shipowners in conformity with these clauses. In the event of a claim submitted by the vessel under these clauses, the Assured shall notify the Insurers, who may thereby, at their expense, defend the Assured against such claim.

6.10.    **GENERAL AVERAGE - YORK AND ANTWERP RULES**

It is hereby agreed that if, according to the contract of affreightment and other transport conventions, General Average settlement has to be made according to the York and Antwerp rules, the Insurers shall comply with this. They shall also pay damages and expenses that the Assured has been unable to recover under these Rules, although they would have been admitted into general average adjustments in keeping with to the usual practices at the ports of destination. General Average adjustments drawn up abroad are binding upon the Insurers.

General Average contributions, expenses and deposits shall not diminish the insured value, which shall be automatically reinstated without additional premium.

To clarify, in so far as this may be necessary, the terms of para. h of the Clauses 1900 (amended in 1931), it is explicitly agreed that the Insurers shall stand in for the Assured to constitute any deposit, guarantee and/or advance regarding the settlement of any damage for their account.

General Average deposits and/or advances shall be reimbursed by the Insurers in the currency in which they have actually been paid.

6.11.    **ABANDONMENT**

Abandonment as a result of the vessel being reported missing may be effected either after a period of two (full) months or, at the option of the Assured, as soon as the vessel is reported "missing" by Lloyd's of London.

Furthermore, in case of damage attaining 3/4 of each package, the Assured is entitled to abandon each package separately (with the exception of merchandise subject to breakage or leakage, insured under the conditions set out in Art. 10, except in the cases laid down in that article).

In the absence of an unloading sequence, the damaged goods shall be attributed where necessary to the final series.

Regarding consignments carried by any means of conveyance other than by sea, the possibility of abandonment is also granted, subject to the stipulations of the Commercial Code, the Antwerp Marine Policy and the present Handwritten Clause.

6.12.    **SERIES**

The Assured is entitled to settlement of damage and to abandonment separately on each vessel, barge or other means of conveyance or storage, and also on each distinct interest and on each class of merchandise, without prejudice to the right of separate claims settlement for each series, as agreed.

In the absence of stipulations to the contrary, the series shall be constituted following the sequence of marks, numbers or other indications or following the sequence of unloading, at the Payees' option.

Regarding merchandise in bulk, the Assured has the same right by dividing batches or bills of lading into series.

6.13.    **SALE IN COURSE OF TRANSIT**

In the event of sale or condemnation of the merchandise other than at the point of destination and in case of Insurers' liability, the indemnity for particular average due under the insurance of the goods shall be equal to the insured value less the net proceeds, if any, after deduction of all expenses and of any freight still due.

The entire insured interest shall guarantee the freight and expenses if these exceed the proceeds of the non-arrived portion.

Should this entirety prove insufficient, the insurance of freight payable at destination, if any, shall be called upon to make good the difference.

# CHAPTER VII : SPECIAL DISPOSITIONS

### 7.1.    "LEADERSHIP" CLAUSE

#### 7.1.1.    Principle

The subscribing co-insurers - companies and/or Lloyd's Underwriters and/or company agents - undertake to comply with any decision taken by the Leading Underwriter.

Consequently the co-insurers are irrevocably bound by any decision taken by the Leading Underwriter as if this had been taken by themselves, and which they shall refrain from contesting in any way.

The range of application of the present clause is in no way restricted, save by the specific exceptions enumerated hereafter; accordingly, it is simply by way of example that the Leadership Clause applies, amongst others, to rating, to the conditions of cover, to any modification or extension of geographical limits or of traffic or insured goods covered, to claim prevention, to claims handling and approval, even if conditional or on commercial grounds, to subrogation against any third party, etc.

In the event of disagreement with the Leading Underwriter, the Assured or the placing broker may consult the co-insurers and the decision of the majority - calculated in proportion to their share in the risk - shall bind the minority.

#### 7.1.2.    Exceptions

Each Insurer shall be free to decide on the following items which are restrictively the only exclusions with regard to the range of application of the present "Leadership" Clause :

-    inclusion of rejection risks, risks of war, strikes, riots and civil commotions, risks of confiscation or expropriation by any authority whatsoever;

-    increase in the maximum limit of the policy;

-    modification of cancellation conditions;

-    change of leading underwriter;

-    inclusion of risks of delay, inherent vice, cover of indirect losses and loss of markets.

#### 7.1.3.    Remark

It is agreed that the term "Leading Underwriter" applies not only to the Leading Company or the Leading Underwriter but also to their Agents or Representatives.

7.2.   **POLICY OF HONOUR**

It is the formal intention of the contracting parties, regarding the insurance of transportation, carried out by any conveyance other than marine, to apply the same rules and legal principles as those resulting from the co-ordinated legislation on Marine Insurance. The assured must act in the utmost good faith in all dealings with the insurers.

Consequently, and with the sole exception of the provisions set out in Art. 16 of the Law of 11.6.1874, when the application of the principles relating to marine insurance to other transports or storages may legally be considered null or void, the Insurers formally declare that they will refrain from making any use of this means of liberation, considering the present particular dispositions to be irreversible and subscribed to by them under the terms of a "policy of honour". The Assured must act in the utmost good faith in all dealings with the Underwriters including declaration made under the policy.

The above specifically concerns the legal dispositions relating to anticipated profit insurance, assessment of the agreed value, "ship and/or cargo lost or not lost" insurance, and/or any other stipulations whereby the provisions of the law of 11.6.1874 might differ from the Law on Marine Insurance.

7.3.   **"EQUIVALENCE" CLAUSE**

Notwithstanding the inclusion of equivalent clauses of foreign insurance markets in policies, certificates and/or in regularisation documents, the Assured shall have the option, in case of claim, of requesting reimbursement of damage on the basis of the corresponding conditions of the Antwerp Marine Policy, completed by the Particular Clauses of the present contract.

7.4.   **SERVICE OF SUIT CLAUSE (U.S.A.)**

Underwriters hereby appoint the following as their agents for the service of process in all actions and proceedings arising from or relating to this policy of insurance :

CLAYMAN & ROSENBERG
305 Madison Avenue – Suite 1301
New York, New York 10165

All papers served upon said agents should be directed to the attention of Seth L. Rosenberg, Esq.

7.5.   **CHOICE OF LAW AND FORUM SELECTION CLAUSE**

All actions and proceedings arising out of or relating to this policy shall be commenced exclusively in the United States District Court for the Southern District of New York or in the Supreme Court of the State of New York for the County of New York.

Notwithstanding anything contained herein to the contrary, this contract of insurance shall be governed by and construed in accordance with the laws of the State of New York applicable to contracts made therein without regard to conflict of laws principals. All actions and proceedings arising out of or relating to this policy shall be governed by, and determined in accordance with, the laws of the State of New York.

### 7.6.     INTERMEDIARY AND DOMICILIATION

Declarations and regularisations of orders, calculation and settlement of premiums and losses, together with any notification, communication and all matters having any bearing whatsoever on the present contract and/or its execution shall be handled exclusively through the intermediary of Marsh S.A., placing brokers of this contract, at whose registered address the Assured declares having elected domicile to this end.

The Insurers declare having elected their domicile either at their registered office or at the office of their agents who underwrote this policy.

### 7.7.     DURATION AND CANCELLATION

The present open policy has been concluded for a period of one year and shall be tacitly renewed annually for a period of the same duration if it has not been cancelled by registered mail addressed and sent to Marsh S.A., 30 days before cancellation, at any time.

However, the Insurers reserve the right to cancel this open policy at any time, subject to notice given by registered letter as foreseen hereunder :

a. in respect of Ordinary Risks : 30 days to be counted from receipt by Marsh S.A.;

b. in respect of War, Strikes, Riots and Civil Commotions risks : as provided for in Clause 4.2.3. para. b of the present policy.

In the event of cancellation by the Insurers of war, strikes, riots and civil commotions risks, the Assured shall have the reciprocal option of cancelling the cover of the ordinary transport risks, as stipulated in Clause 4.2.3. para. b of the present policy.

However, it is hereby expressly agreed that, in the event of cancellation notified as provided for herein, the reciprocal obligations of the contracting parties shall remain in force up to the effective date of expiry of the effects of the contract, which shall be extinguished only on the arrival, in good order, at the point of destination of the last regularly made declaration.

### 7.8.     TIME BAR CLAUSE

No suit, action or proceeding for the recovery of any claim under this Policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by the Assured of the occurrence which gives rise to the claim.

7.9.    **EXAMINATION UNDER OATH CLAUSE**

The Assured shall in the event of loss or damage and as per Underwriters' request submit to an examination under oath be any persons authorized by the Underwriters relative to any and all matters concerning the claim and subscribe to the same; and shall produce for examination all books of accounts, bills, invoices and other vouchers or certified copies thereof if originals be lost, at such reasonable time and place as may be designated by Underwriters or its representatives and shall permit extracts and copies thereof to be made.

7.10.    **FRAUD CLAUSE**

If the Assured shall make any claim knowing the same to be false or fraudulent, as regards amount or otherwise this policy shall become void and all claims hereunder shall be forfeited.

7.11.    **NOTICE OF CHANGE / BROKERS**

It is a condition of this policy, and it is hereby agreed that the Assured's brokers, International Jewelers Underwriters Agency Ltd., or any substituted brokers, shall be deemed to be exclusively the Agents of the Assured not of the Insurers. Any notice given or mailed by or on behalf of the Company to said broker regarding this insurance, or its cancellation shall be deemed to have been delivered to the Assured.

## HANDWRITTEN CLAUSES (01.10.1940)

## ART. 10 CLAUSES 1900 (1931)

The insurance under the conditions of Art. 10 is to be understood on the basis of the following provisions :

Any particular average to the merchandise shall fall under the liability of the Subscribing Insurers only in the various cases enumerated in said Art. 10 of the Clauses 1900 (amended in 1931) and the printed additional clauses.

In these cases, as well as in all cases of general average, particular average, losses, reduction of quantity, of quality, or shortage resulting therefrom shall be fully reimbursed, without franchise, however small they may be.

The Insurers cover shortage in case of a major claim of such a nature as to affect the weight.

Moreover are assimilated to the cases set out in Art. 10, Clauses 1900 (amended in 1931) :

* the risks of explosion, whatever the cause;
* the characteristic accidents occurring while loading, transhipping and unloading;
* regarding sojourn and/or transport overland : the risks of flood, tidal wave, typhoon or hurricane, whirl wind, earthquake and any other similar event;
* regarding transport by inland waterway and/or sojourn in barges : the material damage incurred by the insured merchandise as a result of fire, wind, ice and, in general, of any navigational accidents : any leak in a barge is in every case assimilated to a navigational accident with regard to the insurance of the goods; however in this eventuality the Assured shall always reserve the right of subrogation against the owner of the barge if he should be liable.

In so far as it is necessary, by extension of the provisions of para. e of the Clauses 1900 (amended in 1931), the Insurers accept liability under the terms of the said para. e for any characteristic accidents and calamities occurring during the sojourn and/or transport during the period of risks.

## AGREEMENT "A"

In the event of any diversion, interruption or change of voyage or the means of conveyance not provided for in the clauses of the present policy, the Subscribing Insurers guarantee the aggravation of risks resulting therefrom, subject to an additional premium to be agreed upon amicably or, if necessary, by arbitration.

By derogation of Art. 202 of Commercial Code, the insurance shall not be cancelled before the complete termination of the voyage but remain fully in force to cover, as per conditions of this policy, all accidents and perils of the sea which may occur in the course of the entire voyage as well as during any interruptions and changes thereof.

# INSTITUTE CARGO CLAUSES (A)

**RISKS COVERED**

1. This insurance covers all risks of loss of or damage to the subject-matter insured except as provided in Clauses 4,5,6 and 7 below.

2. This insurance covers general average and salvage charges, adjusted or determined according to the contract of affreightment and/or the governing law and practice, incurred to avoid or in connection with the avoidance of loss from any cause except those excluded in Clauses 4, 5, 6 an 7 or elsewhere in this insurance.

3. This insurance is extended to indemnify the Assured against such proportion of liability under the contract of affreightment "Both to Blame Collision" Clause as is in respect of a loss recoverable hereunder. In the event of any claim by shipowners under the said Clause the Assured agree to notify the Underwriters who shall have the right, at their own cost and expense, to defend the Assured against such claim.

**EXCLUSIONS**

4. In no case shall this insurance cover
   4.1. loss damage or expense attributable to wilful misconduct of the Assured
   4.2. ordinary leakage, ordinary loss in weight or volume, or ordinary wear and tear of the subject-matter insured
   4.3. loss damage or expense caused by insufficiency or unsuitability of packing or preparation of the subject-matter insured (for the purpose of this Clause 4.3. "packing" shall be deemed to include stowage in a container or liftvan but only when such stowage is carried out prior to attachment of this insurance or by the Assured or their servants)
   4.4. loss damage or expense caused by inherent vice or nature of the subject-matter insured
   4.5. loss damage or expense proximately caused by delay, even though the delay be caused by a risk insured against (except expenses payable under Clause 2 above)
   4.6. loss damage or expense arising from insolvency or financial default of the owners managers charterers or operators of the vessel
   4.7. loss damage or expense arising from the use of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

5. 5.1. In no case shall this insurance cover loss damage or expense arising from unseaworthiness of vessel or craft,   unfitness of vessel craft conveyance container or liftvan for the safe carriage of the subject-matter insured, where the Assured or their servants are privy to such unseaworthiness or unfitness, at the time the subject-matter is loaded therein.
   5.2. The Underwriters waive any breach of the implied warranties of seaworthiness of the ship and fitness of the ship to carry the subject-matter insured to destination, unless the Assured or their servants are privy to such unseaworthiness or unfitness.

6. In no case shall this insurance cover loss damage or expense caused by
   6.1. war civil war revolution rebellion insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power
   6.2. capture seizure arrest restraint or detainment (piracy excepted), and the consequences thereof or any attempt thereat
   6.3. derelict mines torpedoes bombs or other derelict weapons of war.

7. In no case shall this insurance cover loss damage or expense
   7.1. caused by strikers, locked-out workmen, or persons taking part in labour disturbances, riots or civil commotions
   7.2. resulting from strikes, lock-outs, labour disturbances, riots or civil commotions
   7.2. caused by any terrorist or any person acting from a political motive

**DURATION**

8.    8.1.    This insurance attaches from the time the goods leave the warehouse or place of storage at the place named herein for the commencement of the transit, continues during the ordinary course of transit and terminates either

      8.1.1.    on delivery to the Consignees' or other final warehouse or place of storage at the destination named herein,

      8.1.2.    on delivery to any other warehouse or place of storage, whether prior to or at the destination named herein, which the Assured elect to use either

            8.1.2.1.    for storage other than in the ordinary course of transit.or

            8.1.2.2.    for allocation or distribution,

            or

      8.1.3.    on the expiry of 60 days after completion of discharge overside of the goods hereby insured from the oversea vessel at the final port of discharge, whichever shall first occur.

    8.2.    If, after discharge overside from the oversea vessel at the final port of discharge, but prior to termination of this insurance, the goods are to be forwarded to a destination other than that to which they are insured hereunder, this insurance, whilst remaining subject to termination as provided for above, shall not extend beyond the commencement of transit to such other destination.

    8.3.    This insurance shall remain in force (subject to termination as provided for above and to the provisions of Clause 9 below) during delay beyond the control of the Assured, any deviation, forced discharge, reshipment or transhipment and during any variation of the adventure arising from the exercise of a liberty granted to shipowners or charterers under the contract of affreightment.

9.    If owing to circumstances beyond the control of the Assured either the contract of carriage is terminated at a port or place other than the destination named therein or the transit is otherwise terminated before delivery of the goods as provided for in Clause 8 above, then this insurance shall also terminate *unless prompt notice is given to the Underwriters and continuation of cover is requested when the insurance shall remain in force, subject to an additional premium if required by the Underwriters,* either

    9.1.    until the goods are sold and delivered at such port or place, or, unless otherwise specially agreed, until the expiry of 60 days after arrival of the goods hereby insured at such port or place, whichever shall first occur,

      or

    9.2.    if the goods are forwarded within the said period of 60 days (or any agreed extension thereof) to the destination named herein or to any other destination, until terminated in accordance with the provisions of Clause 8 above.

10.    Where, after attachment of this insurance, the destination is changed by the Assured, *held covered at a premium and on conditions to be arranged subject to prompt notice being given to the Underwriters.*

**CLAIMS**

11.    11.1.    In order to recover under this insurance the Assured must have an insurable interest in the subject-matter insured at the time of the loss

    11.2.    Subject to 11.1. above, the Assured shall be entitled to recover for insured loss occurring during the period covered by this insurance, notwithstanding that the loss occurred before the contract of insurance was concluded, unless the Assured were aware of the loss and the Underwriters were not.

12.    Where, as a result of the operation of a risk covered by this insurance, the insured transit is terminated at a port or place other than that to which the subject-matter is covered under this insurance, the Underwriters will reimburse the Assured for any extra charges properly and reasonably incurred in loading storing and forwarding the subject-matter to the destination to which it is insured hereunder. This Clause 12, which does not apply to general average or salvage charges, shall be subject to the exclusions contained in Clauses 4, 5,6 and 7 above, and shall not include charges arising from the fault negligence insolvency or financial default of the Assured or their servants.

---

01.01.82 - CL.252 - (FOR USE ONLY WITH THE NEW MARINE POLICY FORM)
CMA-MD/CLAUSES/ICCLA.

13.  No claim for Constructive Total Loss shall be recoverable hereunder unless the subject-matter insured is reasonably abandoned either on account of its actual total loss appearing to be unavoidable or because the cost of recovering, reconditioning and forwarding the subject-matter to the destination to which it is insured would exceed its value on arrival.

14.  14.1.  If any Increased Value insurance is effected by the Assured on the cargo insured herein the agreed value of the cargo shall be deemed to be increased to the total amount under this insurance and all Increased Value insurances covering the loss, and liability under this insurance shall be in such proportion as the sum insured herein bears to such total amount insured. In the event of claim the Assured shall provide the Underwriters with evidence of the amounts insured under all other insurances.

14.2.  **Where this insurance is on Increased Value the following clause shall apply :**
The agreed value of the cargo shall be deemed to be equal to the total amount insured under the primary insurance and all Increased Value insurances covering the loss and effected on the cargo by the Assured, and liability under this insurance shall be in such proportion as the sum insured herein bears to such total amount insured. In the event of claim the Assured shall provide the Underwriters with evidence of the amounts insured under all other insurances.

**BENEFIT OF INSURANCE**

15.  This insurance shall not inure to the benefit of the carrier or other bailee.

**MINIMISING LOSSES**

16.  It is the duty of the Assured and their servants and agents in respect of loss recoverable hereunder
16.1.  to take such measures as may be reasonable for the purpose of averting or minimising such loss, and
16.2.  to ensure that all rights against carriers, bailees or other third parties are properly preserved and exercised and the Underwriters will, in addition to any loss recoverable hereunder, reimburse the Assured for any charges properly and reasonably incurred in pursuance of these duties.

17.  Measures taken by the Assured or the Underwriters with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment of otherwise prejudice the rights of either party.

**AVOIDANCE OF DELAY**

18.  It is a condition of this insurance that the Assured shall act with reasonable despatch in all circumstances within their control.

**LAW AND PRACTICE**

19.  This insurance is subject to English law and practice.

---

*NOTE :- It is necessary for the Assured when they become aware of an event which is "held covered" under this insurance to give prompt notice to the Underwriters and the right to such cover is dependant upon compliance with this obligation.*

---

# INSTITUTE CARGO CLAUSES (AIR)
## (excluding sendings by Post)

**RISKS COVERED**

1. This insurance covers all risks of loss of or damage to the subject-matter insured except as provided in Clauses 2, 3 and 4 below.

**EXCLUSIONS**

2. In no case shall this insurance cover
   2.1. loss damage or expense attributable to wilful misconduct of the Assured.
   2.2. ordinary leakage, ordinary loss in weight or volume, or ordinary wear and tear of the subject-matter insured.
   2.3. loss damage or expense caused by insufficiency or unsuitability of packing or preparation of the subject-matter insured (for the purpose of this Clause 2.3. "packing" shall be deemed to include stowage in a container or liftvan but only when such stowage is carried out prior to attachment of this insurance or by the Assured or their servants).
   2.4. loss damage or expense caused by inherent vice or nature of the subject-matter insured.
   2.5. loss damage or expense arising from unfitness of aircraft conveyance container or liftvan for the safe carriage of the subject-matter insured, where the Assured or their servants are privy to such unfitness at the time the subject-matter insured is loaded therein.
   2.6. loss damage or expense proximately caused by delay, even thought the delay be caused by a risk insured against.
   2.7. loss damage or expense arising from insolvency or financial default of the owners managers charterers or operators of the aircraft.
   2.8. loss damage or expense arising from the use of any weapon of war employing atomic or nuclear fission and/or fusion or other like reaction or radioactive force or matter.

3. In no case shall this insurance cover loss damage or expense caused by
   3.1. war civil war revolution rebellion insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power.
   3.2. capture seizure arrest restraint or detainment (piracy excepted), and the consequences thereof or any attempt thereat.
   3.3. derelict mines torpedoes bombs or other derelict weapons of war.

4. In no case shall this insurance cover loss damage or expense
   4.1. caused by strikers, locked-out workmen, or persons taking part in labour disturbances, riots or civil commotions.
   4.2. resulting from strikes, lock-outs, labour disturbances, riots or civil commotions.
   4.3. caused by any terrorist or any person acting from a political motive.

**DURATION**

5. 5.1. This insurance attaches from the time the subject-matter insured leaves the warehouse, premises or place of storage at the place named herein for the commencement of the transit, continues during the ordinary course of transit and terminates either.
   5.1.1. on delivery to "the Consignee" or other final warehouse, premises or place of storage at the destination named herein,
   5.1.2. on delivery to any other warehouse, premises or place of storage, whether prior to or at the destination named herein, which the Assured elect to use either,
   5.1.2.1. for storage other than in the ordinary course of transit or

5.1.2.2.  for allocation or distribution
or

5.1.2.3. on the expiry of 30 days after unloading the subject-matter insured from the aircraft at the final place of discharge,
whichever shall first occur.

5.2. If, after unloading from the aircraft at the final place of discharge, but prior to termination of this insurance, the subject-matter insured is forwarded to a destination other than that to which it is insured hereunder, this insurance, whilst remaining subject to termination as provided for above, shall not extend beyond the commencement of transit to such other destination.

5.3. This insurance shall remain in force (subject to termination as provided for above and to the provisions of Clause 6 below) during delay beyond the control of the Assured, any deviation, forced discharge, reshipment or transhipment and during any variation of the adventure arising from the exercise of a liberty granted to the air carriers under the contract of carriage.

6.  If owing to circumstances beyond the control of the Assured either the contract of carriage is terminated at a place other than the destination named herein or the transit is otherwise terminated before delivery of the subject-matter insured as provided for in Clause 5 above, then this insurance shall also terminate *unless prompt notice is given to the Underwriters and continuation of cover is requested when the insurance shall remain in force, subject to an additional premium if required by the Underwriters, either.*

6.1. until the subject-matter is sold and delivered at such place or, unless otherwise specially agreed, until the expiry of 30 days after arrival of the subject-matter hereby insured at such place, whichever shall first occur,

or

6.2. if the subject-matter is forwarded within the said period of 30 days (or any agreed extension thereof) to the destination named herein or to any other destination, until terminated in accordance with the provisions of Clause 5 above.

7.  Where, after attachment of this insurance, the destination is changed by the Assured, *held covered at a premium and on conditions to be arranged subject to prompt notice being given to the Underwriters.*

## CLAIMS

8.  8.1. In order to recover under this insurance the Assured must have an insurable interest in the subject-matter insured at the time of the loss.
    8.2. Subject to 8.1. above, the Assured shall be entitled to recover for insured loss occurring during the period covered by this insurance, notwithstanding that the loss occurred before the contract of insurance was concluded, unless the Assured were aware of the loss and the Underwriters were not.

9.  Where, as a result of the operations of a risk covered by this insurance, the insured transit is terminated at a place other than that to which the subject-matter is covered under this insurance, the Underwriters will reimburse the Assured for any extra charges properly and reasonably incurred in unloading storing and forwarding the subject-matter to the destination to which it is insured hereunder. This Clause 9, which does not apply to general average or salvage charges, shall be subject to the exclusions contained in Clause 2, 3 and 4 above, and shall not include charges arising from the fault negligence insolvency or financial default of the Assured or their servants.

10. No claim for Constructive Total Loss shall be recoverable hereunder unless the subject-matter insured is reasonably abandoned either on account of its actual total loss appearing to be unavoidable or because the cost of recovering, reconditioning and forwarding the subject-matter to the destination to which it is insured would exceed its value on arrival.

11. 11.1.   If any Increased Value insurance is effected by the Assured on the cargo insured herein the agreed value of the cargo shall be deemed to be increased to the total amount insured under this insurance and all Increased Value insurances covering the loss, and liability under this insurance shall be in such proportion as the sum insured herein bears to such total amount insured.
        In the event of claim the Assured shall provide the Underwriters with evidence of the amounts insured under all other insurances.

   11.2.   **Where this insurance is on Increased Value the following clause shall apply :**
        The agreed value of the cargo shall be deemed to be equal to the total amount insured under the primary insurance and all Increased Value insurances covering the loss and effected on the cargo by the Assured, and liability under this insurance shall be in such proportion as the sum insured herein bears to such total amount insured.
        In the event of claim the Assured shall provide the Underwriters with evidence of the amounts insured under all other insurances.

**BENEFIT OF INSURANCE**
12. This insurance shall not inure to the benefit of the carrier or other bailee.

**MINIMISING LOSSES**
13. It is the duty of the Assured and their servants and agents in respect of loss recoverable hereunder.
    13.1.   to take such measures as may be reasonable for the purpose of averting or minimising such loss, and
    13.2.   to ensure that all rights against carriers, bailees or other third parties are properly preserved and exercised and the Underwriters will, in addition to any loss recoverable hereunder, reimburse the Assured for any charges properly and reasonably incurred in pursuance of these duties.

14. Measures taken by the Assured or the Underwriters with the object of saving, protecting or recovering the subject-matter insured shall not be considered as a waiver or acceptance of abandonment or otherwise prejudice the rights of either party.

**AVOIDANCE OF DELAY**
15. It is a condition of this insurance that the Assured shall act with reasonable despatch in all circumstances within their control.

**LAW AND PRACTICE**
16. This insurance is subject to English law and practice.

---

NOTE.- It is necessary for the Assured when they become aware of an event which is "held covered" under this insurance to give prompt notice to the Underwriters and the right to such cover is dependent upon compliance with this obligation.

---

MARINE-MD/CLAUSES/ICCAP. – 01.01.82

## "WAR RISKS FOR THE CARRIAGE OF CARGO BY SEA"

### Clause of the Belgian Association of Transport Insurers dd. 27 November 2003

#### Free and non-committal translation

In case of dispute regarding the interpretation of the wording, the Dutch and/or French version prevail

RISKS COVERED

1   In consideration of payment of a premium as provided for, to be agreed or if necessary to be arbitrated, this insurance expressly covers, without deductible, loss of or damage to the subject-matter insured caused by :

   1.1   war, civil war, revolution, rebellion, insurrection, or civil strife arising there from, or any hostile act by or against a belligerent power;

   1.2   capture, seizure, arrest, restraint or detainment, arising from risks covered under 1.1. above, and the consequences thereof or any attempt thereat;

   1.3   derelict mines, torpedoes, bombs or other derelict weapons of war;

   1.4   other war risks as defined in the Belgian Law or in the Antwerp Marine Policy.

2   This insurance also covers general average contribution and salvage charges incurred for the purpose of avoiding or in connection with the avoidance of a loss resulting from a risk covered by this clause, when they are payable according to Belgian Law, the York-Antwerp Rules, the provisions of the contract of affreightment or according to the governing law and practice;

EXCLUSIONS

3   This insurance excludes :

   3.1   any claim based upon loss of or frustration of the insured voyage;

   3.2   any loss, damage or expense in respect of the risks mentioned in clause "Exclusion of Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons, and Exclusion of Abandonment for Radioactive Goods" of the Belgian Association of Transport Insurers dd. 27 November 2003;

   3.3   any loss, damage or expense resulting from inherent vice or nature of the subject-matter insured.

4   Except in the event of capture, seizure, arrest, restraint of detainment and in the cases provided for in article 2, this insurance covers only the physical damages to the subject-matter insured.
   This insurance excludes more particularly :

   4.1   costs of warehousing and/or other costs of storage;

   4.2   any indemnity for delay in arrival of the subject-matter insured or any difference in price resulting therefrom;

   4.3   any loss or damage resulting from prohibition of import or of export.

ABANDONMENT

5   Provided that the physical damage amounts to three quarters of the value of the subject-matter insured, abandonment can be declared to the insurers, without prejudice however to the provisions of the clauses of the Belgian Association of Transport Insurers :

   -   'Abandonment, Total Loss, Clean-Up Expenses and Costs of Removal and Disposal (Destruction) of Debris, Third Party Liability' dd. 19 December 1996;

   -   'Exclusion of Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons, and Exclusion of Abandonment for Radioactive Goods" of the Belgian Association of Transport Insurers dd. 27 November 2003.

DURATION OF RISKS

6      War risks are covered as provided for hereafter :
   6.1    Direct voyage without transhipment
      6.1.1    This insurance attaches as and when the subject-matter insured or part thereof is loaded on the oversea vessel for the purpose of the insured voyage;
      6.1.2    and terminates as and when the subject-matter insured or part thereof is discharged from the oversea vessel at the final port or place of discharge, without extending on board for a longer period than 15 days counting from midnight, local time, of the day of arrival of the oversea vessel at the final port or place of discharge.
   6.2    Continuation of voyage without transhipment
      Nevertheless, subject to notice being given to the insurers as soon as the assured becomes aware thereof and in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated,
      6.2.1    this insurance reattaches when, without having discharged the subject-matter insured at the final port or place of discharge, the oversea vessel sails there from;
      6.2.2    and terminates as and when the subject-matter insured or part thereof is discharged from the oversea vessel at the final or substituted port or place of discharge, without extending on board for a longer period than 15 days counting from midnight, local time, of the day of arrival of the oversea vessel at the final or substituted port or place of discharge.
   6.3    Voyage with transhipment
      6.3.1    If during the insured voyage the oversea vessel arrives at an intermediary port or place in view of on-carriage of the subject-matter insured by oversea vessel or by aircraft, or the subject-matter insured is discharged at a port or place of refuge, then, in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated, this insurance continues until the expiry of 15 days counting from midnight, local time, of the day of arrival of the oversea vessel at such intermediary place or port of refuge.
      In such a case the insurance reattaches as and when the subject-matter insured or part thereof is reloaded for on-carriage on board an oversea vessel or aircraft.
      6.3.2    During the above-mentioned period of 15 days, this insurance remains in force after discharge, but only whilst the subject-matter insured is at such intermediate port or place.
      6.3.3    If the subject-matter insured is on-carried within the said period of 15 days or if this insurance reattaches as provided for in article 6.3.1., and
        a)    where the on-carriage is by oversea vessel, this insurance is effected subject to the provisions of this clause;
        b)    where the on-carriage is by aircraft, this insurance is effected subject to the provisions of the current 'War Risks for the Carriage of Cargo by Air' clause, which shall be deemed to form part of this clause.
   6.4    Substituted place of discharge — on-carriage to original port or place of discharge or other destination
      6.4.1    If the voyage is terminated at a port or place of discharge other than that foreseen, such port or place shall be deemed the final port or place of discharge and the insurance terminates in accordance with article 6.1.2.
      6.4.2    However if the subject-matter insured is subsequently reshipped to the original place of discharge or any other destination, then, provided notice is given to the insurers as soon as the assured becomes aware thereof, and in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated, this insurance reattaches :
        a)    in the case of the subject-matter insured having been discharged, as and when the subject-matter insured or part thereof is reloaded for on-carriage on an oversea vessel;
        b)    in the case of the subject-matter insured not having been discharged, when the vessel sails from the port or deemed final port or place of discharge.
      6.4.3    Thereafter the insurance terminates in accordance with article 6.1.2..
   6.5    Inland craft
      The insurance against the risks of mines or derelict torpedoes, floating or submerged, is extended whilst the subject-matter insured or any part thereof, is on an inland craft, whilst in transit to or from an oversea vessel, but not beyond the expiry of 60 days counting from midnight, local time, of the day of discharge from the oversea vessel, unless otherwise specially agreed by the insurers.

6.6     Deviation or variation of the voyage by the carrier

Subject to notice being given to the insurers as soon as the assured becomes aware thereof and in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated, this insurance shall remain in force during any deviation or any variation of the voyage arising from the exercise of a liberty granted to the shipowner or the charterer of the vessel under the contract of affreightment.

6.7     Variation of the voyage by the assured

Subject to immediate notice being given to the insurers and in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated, the insurance shall remain in force at conditions to be agreed for any variation of the voyage arising out of a decision taken by the assured.

6.8     Arrival

For the purpose of article 6 "arrival" shall be deemed to mean when the oversea vessel is anchored, moored or otherwise secured at a berth or other place located within the harbour authority area.

If such a berth or place is not available, "arrival" is deemed to have occurred when the oversea vessel first anchors or otherwise secures either at or off the intended port or place of discharge.

## FINAL PROVISIONS

7     Notwithstanding the provisions of the law, of the Antwerp Marine Insurance Policy, or of the specific provisions of the policy, anything which is inconsistent with this clause shall be null and void.

8     Notwithstanding article 204 of the Belgian Code of Trade, Book II, this insurance shall not cover ordinary risks.

9     Any dispute arising between the assured and the insurers shall be settled in accordance with the provisions of the Antwerp Marine Insurance Policy, this insurance being subject in all respects to the governing Belgian law.

## "WAR RISKS FOR THE CARRIAGE OF CARGO BY AIR"

### Clause issued by the Belgian Association of Transport Insurers dd. 27 November 2003

### Free and non-committal translation

In case of dispute regarding the interpretation of the wording, the Dutch and/or French version prevail

RISKS COVERED
1.   In consideration of payment of a premium as provided for, to be agreed or if necessary to be arbitrated, this insurance expressly covers, without deductible, loss of or damage to the subject-matter insured caused by :
  1.1.  war, civil war, revolution, rebellion, insurrection, or civil strife arising there from, or any hostile act by or against a belligerent power;
  1.2.  capture, seizure, arrest, restraint or detainment, arising from risks covered under 1.1. above, and the consequences thereof or any attempt thereat;
  1.3. derelict mines, torpedoes, bombs or other derelict weapons of war;
  1.4. other war risks as defined in the Belgian Law or in the Antwerp Marine Insurance policy.

EXCLUSIONS
2.   This insurance excludes :
  2.1.  any claim based upon loss of or frustration of the insured voyage;
  2.2.  any loss, damage or expense in respect of the risks mentioned in clause "Exclusion of Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons, and Exclusion of Abandonment for Radioactive Goods" of the Belgian Association of Transport Insurers dd. 27 November 2003.
3.   This insurance covers only the physical damages to the subject-matter insured.
    This insurance excludes more particularly :
    - costs of warehousing and/or other costs of storage;
    - any indemnity for delay in arrival of the subject-matter insured or any difference in price resulting there from;
    - any loss or damage resulting from prohibition of import or of export.

DURATION OF RISKS
4.   War risks are covered as provided for hereafter :
  4.1.  DIRECT VOYAGE WITHOUT TRANSHIPMENT
    4.1.1.  This insurance attaches as and when the subject-matter insured or part thereof is loaded on the aircraft for the purpose of the insured voyage;
    4.1.2.  and terminates as and when the subject-matter insured or part thereof is discharged from the aircraft at the final place of discharge, without extending on board for a longer period than 15 days counting from midnight, local time, of the day of arrival of the aircraft at the final place of discharge.
  4.2.  CONTINUATION OF VOYAGE WITHOUT TRANSHIPMENT
    Nevertheless, subject to notice being given to the insurers as soon as the assured becomes aware thereof and in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated,
    4.2.1.  this insurance reattaches when, without having discharged the subject-matter insured at the final place of discharge, the aircraft departs there from;
    4.2.2.  and terminates as and when the subject-matter insured or part thereof is discharged from the aircraft at the final or substituted place of discharge, without extending on board for a longer period than 15 days counting from midnight, local time, of the day of arrival of the aircraft at the final or substituted place of discharge.
  4.3.  VOYAGE WITH TRANSHIPMENT
    4.3.1.  If during the insured voyage the aircraft arrives at an intermediary place in view of on-carriage of the subject-matter insured by oversea vessel or by aircraft, then, in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated, this insurance continues until the expiry of 15 days counting from midnight, local time, of the day of arrival of the aircraft at such intermediary place.

In such a case the insurance reattaches as and when the subject-matter insured or part thereof is reloaded for on-carriage on board an aircraft or oversea vessel.

4.3.2.  During the above-mentioned period of 15 days, this insurance remains in force after discharge, but only whilst the subject-matter insured is at such intermediate place.

4.3.3.  If the subject-matter insured is on-carried within the said period of 15 days or if this insurance reattaches as provided in article 4.3.1., and

a) where the on-carriage is by aircraft, this insurance is effected subject to the provisions of this clause;

b) where the on-carriage is by oversea vessel, this insurance is effected subject to the provisions of the current "War Risks for the Carriage of Cargo by Sea" Clause, which shall be deemed to form part of this clause.

4.4.  SUBSTITUTED PLACE OF DISCHARGE —ON-CARRIAGE TO ORIGINAL PLACE OF DISCHARGE OR OTHER DESTINATION

4.4.1.  If the voyage is terminated at a place of discharge other than that foreseen, such place shall be deemed the final place of discharge and the insurance terminates in accordance with article 4.1.2.

4.4.2.  However if the subject-matter insured is subsequently reshipped to the original place of discharge or any other destination, then, provided notice is given to the insurers as soon as the assured becomes aware thereof, and in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated, this insurance reattaches :

a) in the case of the subject-matter insured having been discharged, as and when the subject-matter insured or part thereof is reloaded for on-carriage on an aircraft;

b) in the case of the subject-matter insured not having been discharged, when the aircraft departs from the deemed final place of discharge.

4.4.3.  Thereafter the insurance terminates in accordance with article 4.1.2..

4.5.  DEVIATION OR VARIATION OF THE VOYAGE BY THE AIR CARRIER

Subject to notice being given to the insurers as soon as the assured becomes aware thereof and in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated, this insurance shall remain in force during any deviation or any variation of the voyage arising from the exercise of a liberty granted to the carrier under the contract of air carriage.

4.6.  VARIATION OF THE VOYAGE BY THE ASSURED

Subject to immediate notice being given to the insurers and in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated, the insurance shall remain in force at conditions to be agreed for any variation of the voyage arising out of a decision taken by the assured.

FINAL PROVISIONS

5.  Notwithstanding the provisions of the law, of the Antwerp Marine Insurance Policy, or of the specific provisions of the policy, anything which is inconsistent with this clause shall be null and void.

6.  Notwithstanding article 204 of the Belgian Code of Trade, Book II, in no case shall this insurance cover ordinary (marine) risks.

7.  Any dispute arising between the assured and the insurers shall be settled in accordance with the provisions of the Antwerp Marine Insurance Policy, this insurance being subject in all respects to the governing Belgian Law.

# INSTITUTE CLASSIFICATION CLAUSE

THE MARINE TRANSIT RATES AGREED FOR THIS INSURANCE APPLY ONLY TO CARGOES AND/OR INTERESTS CARRIED BY MECHANICALLY SELF-PROPELLED VESSELS OF STEEL CONSTRUCTION, CLASSED AS BELOW BY ONE OF THE FOLLOWING CLASSIFICATION SOCIETIES.

| | |
|---|---|
| Lloyd's Register | 100 A1 or B.S. |
| American Bureau of Shipping | +A1 |
| Bureau Veritas | 1 3/3 E+ |
| China Classification Society | ★ CSA |
| Germanischer Lloyd | + 100 A5 |
| Korean Register of Shipping | + KRS 1 |
| Maritime Register of Shipping | KM ★ |
| Nippon Kaiji Kyokai | NS★ |
| Norske Veritas | + 1A1 |
| Registro Italiano | ★100A 1.1. Nav. L |

PROVIDED SUCH VESSELS ARE

a)  (i)   not bulk and/or combination carriers over 10 years of age.
    (ii)  not mineral oil tankers exceeding 50,000 GRT which are over 10 years of age.

b)  (i)   not over 15 years of age, OR
    (ii)  over 15 years of age but not over 25 years of age and have established and maintained a regular pattern of trading on an advertised schedule to load and unload at specified ports.

CHARTERED VESSELS AND ALSO VESSELS UNDER 1000 G.R.T. WHICH ARE MECHANICALLY SELF-PROPELLED AND OF STEEL CONSTRUCTION MUST BE CLASSED AS ABOVE AND NOT OVER THE AGE LIMITATIONS SPECIFIED ABOVE.

THE REQUIREMENTS OF THE INSTITUTE CLASSIFICATION CLAUSE DO NOT APPLY TO ANY CRAFT, RAFT OR LIGHTER, USED TO LOAD OR UNLOAD THE VESSEL, WHILST THEY ARE WITHIN THE PORT AREA.

CARGOES AND/OR INTERESTS CARRIED BY MECHANICALLY SELF-PROPELLED VESSELS NOT FALLING WITHIN THE SCOPE OF THE ABOVE ARE HELD COVERED SUBJECT TO A PREMIUM AND ON CONDITIONS TO BE AGREED.

01/08/1997

# INSTITUTE REPLACEMENT CLAUSE

In the event of loss of or damage to any part or parts of an insured machine caused by a peril covered by the Policy the sum recoverable shall not exceed the cost of replacement or repair of such part or parts plus charges for forwarding and refitting, if incurred, but excluding duty unless the full duty is included in the amount insured, in which case loss, if any, sustained by payment of additional duty shall also be recoverable.

Provided always that in no case shall the liability of Underwriters exceed the insured value of the complete machine.

# MECHANICAL AND ELECTRICAL DERANGEMENT EXCLUSION

Excluding loss of or damage to the subject matter due to mechanical, electrical of electronical derangement unless there is evidence of external damage to the insured item or its packing.

### "STRIKES AND RIOTS RISKS"

**Clause issued by the Belgian Association of Transport Insurers dated 27 November 2003**

### Free and non-committal translation

In case of dispute regarding the interpretation of the wording, the Dutch and/or French version prevail

RISKS COVERED

1.    In consideration of payment of a premium as provided for, to be agreed or if necessary to be arbitrated, but subject to the exclusions under article 2 below, this insurance covers, without franchise, loss of or damage to the subject-matter insured directly caused by :

    1.1.  strikers, locked-out workmen, or persons taking part in riots, civil commotions or strife arising out of labour disturbances;
    1.2.  any terrorist or any other person acting from a political motive.

EXCLUSIONS

2.    Notwithstanding any legal or contractual arrangements however without any derogation to the exclusions as provided for in the particular and general conditions of this policy (except the exclusions, which are covered under this clause), this insurance shall in no case cover loss damage liability and/or expenses :

-  caused by any of the events mentioned in paragraph 2 of article 1 of the Antwerp Marine Insurance Policy, including war declared or not, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom;
-  arising from inherent vice or nature of the subject-matter insured, unless the loss and/or damage is a direct consequence of a risk mentioned in article 1;
-  in respect of the risks mentioned in clause "Exclusion of Radioactive Contamination, Chemical, Biological, Bio-Chemical and Electromagnetic Weapons, and Exclusion of Abandonment for Radioactive Goods" of the Belgian Association of Transport Insurers dd. 27 November 2003.

3.    This insurance only covers physical loss of and/or damage to the subject-matter insured. This insurance excludes amongst other :

- warehousing expenses and other storage expenses;
- any indemnity for delay in arrival of the subject-matter insured or any difference in price resulting therefrom, except in respect of expenses arising from delay and admitted as general average expenses as per the York-Antwerp Rules in force at the moment the loss or damage occurs;
- any loss or damage arising from import or export prohibition.

DURATION OF RISKS

4.1    This insurance attaches from the time the subject-matter insured leaves the warehouse where the insured transit commences and continues while the subject-matter insured being in the ordinary course of transit and, in any event, shall terminate :

    4.1.1  either as per the stipulations mentioned in the Policy,
    4.1.2  or on delivery to the Consignee's or other final warehouse or place of storage at the destination named herein,
    4.1.3  or on delivery to any other warehouse or place of storage, whether prior to or at the destination named herein, which the Assured elect to use either for storage other than in the ordinary course of transit or for allocation or distribution,

4.1.4 or in the respect of marine transits, on the expiry of 60 days counting from midnight, local time, of the day of completion of discharge overside of the goods hereby insured from the oversea vessel at the final port of discharge,

4.1.5 or in respect of air transits, on the expiry of 30 days counting from midnight, local time, of the day of completion of unloading of the subject-matter insured from the aircraft at the final airport of discharge.

whichever shall first occur.

4.2    Extension of the duration of the risks

The extension of the duration of the risks as mentioned in item 4.1 :

4.2.1 will not be granted in respect of cover for loss of or damage to the subject-matter insured caused by any terrorist or any other person acting from a political motive;

4.2.2 in respect of cover for loss of or damage to the subject-matter insured caused by strikers, locked-out workmen, or persons taking part in riots, civil commotions or strife arising out of labour disturbances, must be requested from the insurers either at the time the risk is accepted, or prior to expiry of these periods of respectively 60 or 30 days.

4.3    Deviation or change of the voyage by the carrier

If the transit is terminated at a port or place other than that named in the policy, due to the exercise by the carrier of a liberty granted under the contract of carriage, and subject to notice being given to the insurers as soon as the assured becomes aware thereof and in consideration of payment of an additional premium to be agreed or arbitrated, this insurance shall remain in force until the subject-matter insured is sold and delivered at the place of discharge, however subject to the provisions of the abovementioned items 4.1 and 4.2.

If the subject-matter insured is not sold, but is reforwarded to the destination named in the policy or to any other place, this insurance shall remain in force until its arrival in the warehouse at final destination, however subject to the provisions of the abovementioned items 4.1 and 4.2.

4.4    Change of the voyage by the assured

Subject to immediate notice being given to the insurers and in consideration of payment of an additional premium to be agreed or if necessary to be arbitrated, this insurance shall remain in force at conditions to be agreed, for any change of the voyage arising out of a decision taken by the assured, however subject to the provisions of the abovementioned items 4.1 and 4.2.

## FINAL PROVISIONS

5    Notwithstanding any legal, contractual or other provisions, any alteration to the provisions of this clause shall be null and void.

6    Any dispute arising between the assured and the insurers shall be settled in accordance with the provisions of the Marine Insurance Policy of Antwerp; this cover is subject to Belgian Law.

## "EXCLUSION OF CYBER ATTACK"

1.   Subject only to point 2 below, in no case shall this insurance cover loss damage liability or expense directly or indirectly caused by or contributed to by or arising from the use or operation, as a means for inflicting harm, of any computer, computer system, computer software programme, malicious code, computer virus or process or any other electronic system.

2.   Where this clause is endorsed on policies covering risks of war, civil war, revolution, rebellion, insurrection, or civil strife arising therefrom, or any hostile act by or against a belligerent power, or terrorism or any person acting from a political motive, point 1 shall not operate to exclude losses (which would otherwise be covered) arising from the use of any computer, computer system or computer software programme or any other electronic system in the launch and/or guidance system and/or firing mechanism of any weapon or missile.



# IJU AGENCY LTD.
**Brokers of Marine Insurance & Specialty Risks**

## PRELIMINARY INFORMATION FOR QUOTES
## INTERNATIONAL TRANSPORTATION INSURANCE

1. Client's exact Name & Last Name.
**HASSAN ALAWIE**

   (**XXXX**) Importer    (**XXXX**) Exporter    (    )Freight Forwarder    (    ) Trading
2. Commercial Name of the importer (or soliciting company) and address
**WORLD MAGIC ENTERTAINMENT INC.**
**2201 NW 102 PLACE, SUITE 2**
**MIAMI, FL  33172**

3. Number of years this company has been established in this business.
**7 YEARS**
4. Exactly, what kind of merchandise will be insured?

| a. Kind of Merchandise | % of total |
|---|---|
| **ELETRONICS** | **90%** |
| **COMPUTER HARDWARE** | **5%** |
| **CELLULAR ACCESSORIES** | **5%** |
|  | % |

5. What kind of packaging do you use for the merchandise?

| a. Kind of packaging | % of total |
|---|---|
| **ORIGINAL BOXES** | % |
| **CONTAINERS** | % |
|  | % |
|  | % |

6. How do you transport the merchandise?

   a.  by Sea **95 %**
   b.  by Air **5 %**
   c.  Other         %        What Other?    **OVERLAND TRANSIT**

Additional Details

7. Total value of annual shipments
   **US$ 39,391,000.00**

| Marine Cargo Proposal | Page 1 | Signature |
|---|---|---|



# IJU AGENCY LTD.
### Brokers of Marine Insurance & Specialty Risks

8.  a.  Maximum Value per Shipment:     U$  1,000,000.00
    b.  Maximum Value per Container:     U$  1,000,000.00
    c.  Minimum Value per Container:     U$

9.  Expected volume of Annual Shipments:

10. History of prior claims (for last 3 years, preferably 5 years.), including if no insurance and if not paid by insurer.

| Date of Loss | Description of Loss | Amount of loss | Amount Insurance Paid | Company |
|---|---|---|---|---|
| JUN 3/2005 | SHORTAGE AT PORT OF SANTOS | | $149,382.00 | MARSH |

PREVIOUS LOSSES - AS PER FILE
NO OTHER LOSSES - SEE NOTES Q.15

11. Origin and Destination of merchandise.

a.  Origin of Merchandise                    % of total

| | |
|---|---|
| MIAMI - USA | 70% |
| HONG KONG | % |
| CHINA | % |
| CANADA | % |
| | % |

b.  Destination of Merchandise                % of total

| | |
|---|---|
| MIAMI - USA | % |
| CIUDAD DEL ESTE - PARAGUAY | % |
| | % |
| | % |
| | % |

12. Current Insurance, Insurance Carrier, Taxes and Annual Premium

| Type of Insurance | Carrier | Annual Prem. Inc. Taxes |
|---|---|---|
| MARINE INS. | MARSH | 0.55% + 0.05% WSRCC |

13. What kind of coverage is required?
**ALL RISKS DOOR TO DOOR COVERAGE**

| Marine Cargo Proposal | Page 2 | Signature |
|---|---|---|



## IJU AGENCY LTD.
**Brokers of Marine Insurance & Specialty Risks**

14. Provide full information about your security measures. If necessary, continue on separate page.

15. Additional Information.
**DEDUCTIBLE : U$ 10% OF CLAIM WITH $25,000 MINIMUM**
**WAREHOUSE COVERAGE  $300,000.00   AS PER FILE @$9,750**

**NASA ELETRONICS CORP.  TO BE ENDORSED ON THIS POLICY**

**Losses 2003 – Assured had a CIF purchase that was missing after delivered at freight forwarder.**
**Merchandise arrived OK and disappeared from the warehouse days later**
Signing this proposal and declaration does not bind the Proposer to complete the insurance, but it is agreed that this proposal and declaration shall constitute a warranty should a policy be issued.

Any person who knowingly and with intent to defraud any insurer or other person files an application for insurance containing false information, or conceals, for the purpose of misleading, information containing fact material thereto, commits a fraudulent insurance act which is a crime.

Signature of Proposer    _____

Title

Place and Date        MIAMI  03/10/2006

Note:  This information is exclusively confidential for your application for a quote of International Transportation Insurance.  There may be a need for additional information in order for you to receive a quotation for insurance.

Marine Cargo Proposal        Page 3